1  C. D. Michel - S.B.N. 144258
   Hillary J. Green - S.B.N. 243221
2  Clinton B. Monfort - S.B.N. 255609
   Sean A. Brady - S.B.N. 262007
3  MICHEL & ASSOCIATES, P.C.
   180 E. Ocean Boulevard, Suite 200
4  Long Beach, CA 90802
   Telephone: 562-216-4444
5  Facsimile: 562-216-4445
   Email: cmichel@michellawyers.com
6
7  Attorneys for Plaintiffs
8
9         IN THE UNITED STATES DISTRICT COURT
10       FOR THE EASTERN  DISTRICT OF CALIFORNIA
11            FRESNO BRANCH COURTHOUSE

12  BARRY BAUER, STEPHEN          ) CASE NO.
    WARKENTIN, NICOLE FERRY,      )
13  LELAND ADLEY, JEFFREY         )
    HACKER, NATIONAL  RIFLE       ) **COMPLAINT FOR DECLARATORY**
14  ASSOCIATION OF AMERICA,       ) **AND INJUNCTIVE RELIEF**
    INC.,  CALIFORNIA RIFLE PISTOL)
15  ASSOCIATION FOUNDATION,       ) **42 U.S.C. sections 1983, 1988**
    HERB BAUER SPORTING GOODS,    )
16  INC.                          )
                                  )
17       Plaintiffs              )
                                  )
18                 vs.           )
    KAMALA HARRIS, in Her Official )
19  Capacity as Attorney General For the )
    State of California; STEPHEN   )
20  LINDLEY, in His Official Capacity )
    as Acting Chief for the California )
21  Department of Justice, and DOES 1- )
    10.                           )
22                                )
         Defendants.              )
23  _____)

24
25        PLAINTIFFS, by and through their undersigned attorneys, bring this
26  Complaint for Declaratory and Injunctive Relief against the above-named
27  Defendants, their employees, agents, and successors in office, and in support
28  thereof allege the following:

                                    1

**INTRODUCTION**

1.  When a would-be firearm purchaser wishes to obtain a firearm in California, state law generally requires the buyer to process the transaction through a federally licensed California firearm dealer (an "FFL").

2.  In doing so, the would-be purchaser must, among other things, fill out a Dealer's Record of Sale ("DROS") form, the information from which is used by the California Department of Justice ("DOJ") to conduct an extensive background check on the would-be purchaser before he or she can take possession of any firearm.

3.  California statutory law confers on DOJ[1] the authority, subject to some discretion, to impose multiple, separate "fees" on the purchasers of firearms.  DOJ imposes and collects these fees through firearm retailers, and currently exercises that discretion by charging firearm purchasers the maximum amounts provided for by certain statutes.

4.  PLAINTIFFS bring this suit to challenge the constitutionality and legality of the "fees" imposed under those statutes and levied on the purchase or transfer of firearms; specifically, California Penal Code sections 12076(e) [Revised Penal Code section 28255(a)-(c)], 12076.5 [28300(c)], 12088.9 [23690(a)], and 12805(e) [31650(c)] (collectively, the "Challenged Fees").[2]

5.  To some extent the amount of some "fees" are set at the discretion of, DOJ but in all cases the "fees" are enforced and collected by DOJ through an FFL

---

[1]  DEFENDANTS, being sued in their official capacity as heads of the DOJ, and DOJ being under DEFENDANTS' control, all references to "DOJ" herein should be construed as a reference to DEFENDANTS.

[2]  Pursuant to the Legislature's enactment of Assembly Concurrent Resolution 73 (McCarthy) 2006, which authorized a Non-Substantive Reorganization of California's Deadly Weapons Statutes, various California Penal Code sections will be renumbered, effective January 1, 2012. For convenience and ease of reference, the corresponding "renumbered" code section for each referenced Penal Code section is provided in brackets.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    regulated by DOJ.

2        6.  The accounts containing the revenues amassed from the Challenged Fees,

3    which DOJ manages, run a multi-million dollar surplus, even though constitutional

4    principles and governing law limit such government assessments to the reasonable

5    cost of regulating the actual activity on which the "fee" is imposed (i.e., the

6    clearance of the firearm purchaser).

7        7.  Each of the Challenged Fees unconstitutionally infringes on

8    PLAINTIFFS' right to keep and bear arms under the Second Amendment to the

9    United States Constitution. PLAINTIFFS and other lawful firearm purchasers are

10   subjected to these excessive "fees" as a prerequisite to exercising a fundamental

11   right, and the windfall revenues from the "fees" are used by DEFENDANTS to

12   finance state law enforcement activities unrelated to the regulation of the lawful

13   purchase of firearms, or the clearance of firearm purchasers.

14       8.  For similar reasons, each of the Challenged "Fees" is not really a "fee" at

15   all, but an illegal tax enacted and imposed in violation of the California

16   Constitution.

17       9.  PLAINTIFFS seek declaratory and injunctive relief to invalidate and halt

18   DOJ's current imposition of the Challenged Fees.

19                          **JURISDICTION and VENUE**

20       10.  Jurisdiction of this action is founded on 28 U.S.C. §§ 1331, 1343, and

21   1367, in that this action arises under the Constitution and laws of the United States,

22   and under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983, in that this action seeks to

23   redress the deprivation, under color of the laws, statutes, ordinances, regulations,

24   customs, and usages of the State of California and political subdivisions thereof, of

25   rights, privileges, or immunities secured by the United States Constitution and by

26   Acts of Congress.

27       11.  The Court has supplemental jurisdiction over PLAINTIFFS' state law

28   claims asserted herein under 28 U.S.C. § 1367 because such claims arise out of the

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   same case or controversy as the federal claims.

2      12.  PLAINTIFFS' claims for declaratory and injunctive relief are authorized

3   by 28 U.S.C. §§ 2201 and 2202.

4      13.  Venue in this judicial district is proper under 28 U.S.C. § 1391(b) because

5   a substantial part of the events or omissions giving rise to the claims occurred in

6   this district.

7                                    **PARTIES**

8   **I.   Plaintiffs**

9      14.  Plaintiff BARRY BAUER is a resident, property owner, and taxpayer of

10  Fresno, California. Within the last five years, Plaintiff BAUER has lawfully

11  purchased firearms, including both handguns and long-guns.

12     15.  Plaintiff BAUER is the "Responsible Person"[3] on the Federal Firearms

13  License of FFL Plaintiff HERB BAUER SPORTING GOODS, INC. As such,

14  Plaintiff BAUER is subjected to being fingerprinted and background checked by

15  the Federal Firearms Licensing Center every three (3) years upon license renewal,

16  and annually subjected to at least one additional background check by California

17  DOJ to obtain a Certificate of Eligibility, - which the "Responsible Person" for a

18  licensed dealer must obtain to be on the Central List of Firearms Dealers (which is

19  required to sell firearms in California) - and possibly a second background check as

20  part of his annual application for a second-hand dealer permit.[4]

21  _____

22     [3] ATF defines a "responsible person" as "a sole proprietor, partner, or anyone having the
    power to direct the management, policies, and practices of the business as it pertains to firearms.

23  In a corporation this includes corporate officers, shareholders, board members, or any other
    employee with the legal authority described above." Bureau of Alcohol, Tobacco, Firearms and

24  Explosives Online - Firearms - How To - Become An FFL, http://www.atf.gov/firearms/how-to/

25  become-an-ffl.html (last visited Aug. 24, 2011); see also Instruction Sheet for ATF Form 7
    (5310.12) (Application for Federal Firearms License) at # 10, *available at*

26  http://www.atf.gov/forms/download/atf-f-5310-12.pdf.

27     [4] These background checks on Plaintiff BAUER are in addition to the background check
    on him by DOJ for the renewal of his permit to carry a concealed handgun, pursuant to California

28  Penal Code section 12050 every two years.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

16.  Despite being so thoroughly checked as a Responsible Person, for each of his transactions, Plaintiff BAUER has still had to pay all "fees" California imposes on firearm transfers.

17.  Plaintiffs STEPHEN WARKENTIN and JEFFREY HACKER are residents, property owners, and taxpayers of Fresno, California. Within the last five years, each has purchased multiple firearms from both an FFL and a private party, through an FFL as required by California Penal Code § 12070 [26500]. These transactions have consisted of both handguns and long-guns. Some of these transactions involved a single firearm, while others involved multiple handguns (by way of private party transfers), multiple long-guns, and a combination of a handgun and a long-gun.

18.  For each of their transactions, Plaintiffs WARKENTIN and HACKER have paid all "fees" California requires for firearm transfers described below. Accordingly, each of them has paid $50 in state fees for a transaction including a single handgun and a single long-gun, $46 for a transaction including two handguns, and $25 for transactions involving a single firearm or multiple long-guns.[5]  Plaintiffs WARKENTIN and HACKER have had to pay the Challenged Fees multiple times in the same year, and, in some cases, the same month. Also, within the last five years, Plaintiffs WARKENTIN and HACKER have each had to pay California's $15 fee to obtain a Handgun Safety Certificate.

19.  Plaintiff NICOLE FERRY is a resident of Fresno, California. Within the last five years, Plaintiff FERRY has purchased handguns from an FFL for self-defense and target practice. For each of her transactions, Plaintiff FERRY has paid all "fees" California requires for firearm transfers described below. Plaintiff FERRY has had to pay California's fees for firearm transfers more than once in the

---

[5]  See OVERVIEW OF REGULATORY SCHEME, Section II. B - "State Fees Imposed on Firearm Sales and Transfers" for an explanation and breakdown of each of these "fee" amounts.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  same year. Also within the last five years, Plaintiff FERRY has had to pay

2  California's $15 fee to obtain a Handgun Safety Certificate.

3      20.  Plaintiff LELAND ADLEY is a resident, property owner, and taxpayer of

4  Fresno, California. Within the last five years, Plaintiff ADLEY has purchased

5  multiple firearms from both an FFL and a private party, through an FFL as required

6  by California Penal Code § 12070 [26500], including both handguns and

7  long-guns.

8      21.  For each of his transactions, Plaintiff ADLEY paid all "fees" California

9  requires for firearm transfers described below. Plaintiff ADLEY has had to pay

10  California's "fees" for firearm transfers multiple times in the same year. Also

11  within the last five years, Plaintiff ADLEY has had to pay California's $15 "fee" to

12  obtain a Handgun Safety Certificate.

13      22.  Plaintiff NATIONAL RIFLE ASSOCIATION OF AMERICA, INC.

14  (hereafter "NRA") is a non-profit association incorporated under the laws of New

15  York, with its principal place of business in Fairfax, Virginia. NRA has a

16  membership of approximately 4 million persons. The purposes of NRA include

17  protection of the right of law-abiding citizens to keep and bear firearms for the

18  lawful defense of their families, persons, and property, and from unlawful

19  government regulations and preconditions placed on the exercise of that right.

20  NRA brings this action on behalf of itself and its hundreds of thousands of

21  members in California, including Plaintiffs BAUER, WARKENTIN, ADLEY, and

22  HACKER, who are subjected to the Challenged Fees.

23      23.  Plaintiff CALIFORNIA RIFLE AND PISTOL ASSOCIATION

24  FOUNDATION ("CRPA FOUNDATION") is a non-profit entity classified under

25  section 501(c)(3) of the Internal Revenue Code and incorporated under California

26  law, with headquarters in Fullerton, California. Contributions to the CRPA

27  FOUNDATION are used for the direct benefit of Californians. Funds contributed

28  to and granted by CRPA FOUNDATION benefit a wide variety of constituencies

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

throughout California, including gun collectors, hunters, target shooters, law enforcement, and those who choose to own a firearm to defend themselves and their families. The CRPA FOUNDATION seeks to: raise awareness about unconstitutional laws, defend and expand the legal recognition of the rights protected by the Second Amendment, promote firearms and hunting safety, protect hunting rights, enhance marksmanship skills of those participating in shooting sports, and educate the general public about firearms. The CRPA FOUNDATION supports law enforcement and various charitable, educational, scientific, and other firearms-related public interest activities that support and defend the Second Amendment rights of all law-abiding Americans.

24.  In this suit, the CRPA FOUNDATION represents the interests of its many citizen and taxpayer members and members of its related association the California Rifle and Pistol Association who reside in California and who wish to sell or purchase firearms, or who have sold or purchased firearms, and have been charged "fees" imposed by the laws of the State of California associated with those transactions. These members are too numerous to conveniently bring this action individually. The CRPA FOUNDATION and the individuals whose interests are represented by the CRPA FOUNDATION have been, are being, and will in the future be affected by DEFENDANTS' imposition of these "fees."

25.  Plaintiff HERB BAUER SPORTING GOODS, INC., is a California corporation with its principal place of business in the County of Fresno, California. It is a licensed firearms dealer under both federal and California law (i.e., an FFL) that sells a variety of firearms, including both long-guns and handguns. California law requires Plaintiff HERB BAUER to collect the Challenged Fees for DOJ, at DOJ's direction, from firearm transferees. Accordingly, Plaintiff HERB BAUER is injured by its being forced to facilitate DEFENDANTS' unlawful "fee" collection activities.

26.  The individual PLAINTIFFS identified above are citizens and taxpayers

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   of California from the City and County of Fresno who have been required to pay

2   the Challenged Fees in violation of their rights and applicable law.

3       27.  Each of the associational PLAINTIFFS identified above has individual

4   members who are citizens and taxpayers of California, including in Fresno County,

5   who have an acute interest in purchasing firearms and do not wish to pay unlawful

6   fees, taxes, or other costs associated with that purchase and thus have standing to

7   seek declaratory and injunctive relief to halt or reduce the imposition or charging

8   of unconstitutional fees or taxes. The interests of these members are germane to

9   their respective associations' purposes; and neither the claims asserted nor the

10   relief requested herein requires their members participate in this lawsuit

11   individually.

12   **II.   Defendants**

13       28.  Defendant KAMALA HARRIS is the Attorney General of California. She

14   is the chief law enforcement officer of California, and is charged by Article V,

15   Section 13 of the California Constitution with the duty to inform the general public

16   and to supervise and instruct local prosecutors and law enforcement agencies

17   regarding the meaning of the laws of the State, including the Challenged Fees, and

18   to ensure the fair, uniform and consistent enforcement of those laws throughout the

19   state. She is sued in her official capacity.

20       29.  Defendant STEPHEN LINDLEY is the Acting Chief of the DOJ Bureau

21   of Firearms and, as such, is responsible for executing, interpreting, and enforcing

22   the laws of the State of California – as well as its customs, practices, and policies –

23   at issue in this lawsuit. He is sued in his official capacity.

24       30.  Defendants HARRIS and LINDLEY (collectively "DEFENDANTS") are

25   responsible for administering and enforcing the Challenged Fees, are in fact

26   presently enforcing the challenge provision against PLAINTIFFS, and will

27   continue to enforce the Challenged Fees against PLAINTIFFS.

28       31.  The true names or capacities, whether individual, corporate, associate or

1 otherwise of the DEFENDANTS named herein as DOES 1-10, are presently

2 unknown to PLAINTIFFS, who therefore sue said DEFENDANTS by such

3 fictitious names. PLAINTIFFS pray for leave to amend this Complaint and Petition

4 to show the true names, capacities, and/or liabilities of DOE Defendants if and

5 when they have been determined.

6 ## OVERVIEW OF REGULATORY SCHEME

7 ## I.    Constitutional Provisions

8 32.  The Second Amendment to the United States Constitution provides: "A

9 well regulated militia, being necessary to the security of a free State, the right of

10 the people to keep and bear arms, shall not be infringed." U.S. Const. Amend. II.

11 33.  The United States Supreme Court recently held in *District of Columbia v.*

12 *Heller*, 554 U.S. 570 (2008), that the Second Amendment of the United States

13 Constitution protects an individual civil right to possess firearms for self-defense.

14 34.  The Court soon thereafter held in *McDonald v. Chicago*, 130 S. Ct. 3020

15 (2010), that the Second Amendment is incorporated through the Due Process

16 clause of the 14th Amendment to restrict state and local governments from

17 infringing on the individual right to keep and bears arms, and made clear the right

18 is a fundamental one.

19 35.  Several courts, including a panel of the Ninth Circuit Court of Appeals in

20 *Nordyke v. King*, 664 F.3d 776 (9th Cir. 2011), have concluded that the right to

21 keep and bear arms for self-defense implies a corresponding right to acquire

22 firearms. *See also Ezell v. City of Chicago*, 2011 WL 2623511, *14 (July 6, 2011).

23 36.  In *Cox v. New Hampshire*, 312 U.S. 569 (1941), the United States

24 Supreme Court held that fees levied on regulated speech activities must be only of

25 amounts necessary to "meet[] the expense incident to the administration of the Act

26 and to the maintenance of public order *in the matter licensed*." (emphasis added.)

27 Any additional charge above and beyond that rate would be invalid.

28 37.  In *Murdock v. Pennsylvania*, 319 U.S. 105 (1943), the United States

1    Supreme Court clarified the bounds of the *Cox* holding, indicating that when

2    constitutionally protected activity is being regulated, States may impose a fee only

3    "as a regulatory measure and calculated to defray the expenses of policing the

4    activities in question." It is not permissible to impose "a flat license tax levied and

5    collected as a condition" to the "enjoyment of a right granted by the Federal

6    Constitution" and "unrelated to the scope of the activities of [the payer of the fee]."

7        38. In *Forsythe County v. Nationalist Movement*, 505 U.S. 123 (1992), the

8    Court further clarified the issue of when it is permissible to charge fees regulating

9    constitutionally protected conduct, indicating that a State or locality may impose a

10   tax or fee on constitutionally protected conduct, as long as it bears a sufficient

11   relationship to a legitimate state interest.

12   **II.    California Law**

13       **A.    Regulating the Imposition of Taxes and Fees**

14       39. Section 3 of Article XIII A of the California Constitution (hereafter

15   "Section 3"), originally passed in 1978 as Proposition 13 (and later amended by

16   Proposition 26 below), provided:

17       From and after the effective date of this article, any changes in state taxes
     enacted for the purpose of increasing revenues collected pursuant thereto

18       whether by increased rates or changes in method of computation must be
     imposed by an Act passed by not less than two- thirds of all members

19       elected to each of the two houses of the Legislature, except that no new
     ad valorem taxes on real property, or sales or transaction taxes on the

20       sales of real property may be imposed.

21       40. In *Sinclair Paint Co. v. State Board of Equalization*, 15 Cal. 4th 866,

22   (1997), the California Supreme Court established the test for determining whether

23   an assessment is a "tax" under Section 3, holding it is *not* a "tax" unless: (1) the

24   amount exceeds the "reasonable cost" of providing services related to the

25   regulatory activity for which the charge was imposed, (2) the charge is levied for

26   unrelated revenue purposes, or (3) there is no relationship or nexus between the

27   activities or operations of the fee payer and the regulatory activities to be supported

28   by the fee.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

41.  Proposition 26 (2010) amended Section 3 to clarify what constitutes a "tax" under California law. It essentially incorporated the principles of *Sinclair Paint Co.* and its progeny, ending the previously common legislative and regulatory shell-game of levying a tax under the guise of a regulatory "fee." Proposition 26's most relevant amendment to Section 3 for purposes of this lawsuit is the following:

> The State bears the burden of proving by a preponderance of the evidence that a levy, charge, or other exaction is not a tax, that the amount is no more than necessary to cover the reasonable costs of the governmental activity, and that the manner in which those costs are allocated to a payor bear a fair or reasonable relationship to the payor's burdens on, or benefits received from, the governmental activity.

Cal. Const. art. XIII A, § 3(d).

**B.   State Fees Imposed on Firearm Sales and Transfers**

    **1.   The Dealer's Record of Sale (DROS) "Fee" [6]**

42.  California Penal Code section 12076, subdivisions (e) 28225(a)-(c)], (f) [28230], (g) [28235], and (i) [28240(a)-(b)], establish the "fees" associated with a DROS, and govern what the funds collected therefrom can be used for.

43.  Subdivision (e) of Penal Code section 12076 [28225(a)] provides (emphasis added):

> The [DOJ] *may* require the [FFL] to charge each firearm purchaser a fee not to exceed fourteen dollars ($14), except that the fee may be increased at a rate not to exceed any increase in the California Consumer Price Index as compiled and reported by the  Department of Industrial Relations.

44.  It further provides that "[t]he fee shall be no more than is necessary to fund" the activities enumerated at Penal Code section 12076(e)(1)-(9) [28255(a),(b)(1)-(10)].

45.  Subdivision (e)(10) [28225(b)(11)], enacted by Assembly Bill 161 (2003),

---

[6]  The "fees" DOJ charges pursuant to California Code of Regulations, Title 11, Section 4001, and Penal Code sections 12076(e) [28225(a)-(c)], 12076(f)(1)(B) [28230(a)(2)], discussed herein, shall be referred to as the "DROS 'fee'" throughout.

1  purports to authorize the DOJ to use revenues from the DROS "fee" to fund "the

2  estimated reasonable costs of [DOJ] firearms-related regulatory and enforcement

3  activities related to the sale, purchase, loan, or transfer of firearms."

4      46.  Penal Code section 12076(f)(1)(B) [28230(a)(2)] further provides for DOJ

5  to use "fee" revenues for "the actual processing costs associated with the

6  submission of a [DROS] to the [DOJ]."

7      47.  Subsection (g) of 12076 [28235] provides:

8      All money received by the [DOJ] pursuant to this section shall be
       deposited in the Dealer's Record of Sale Special Account of the
9      General Fund, which is hereby created, to be available, upon
       appropriation by the Legislature, for expenditure by the [DOJ] to
10     offset the costs incurred pursuant to this section, paragraph (1) and
       subparagraph (D) of paragraph (2) of subdivision (f) of Section
11     12072, Sections 12083 and 12099, subdivision (c) of Section
       12131, Sections 12234, 12289, and 12289.5, and subdivisions (f)
12     and (g) of Section 12305.

13     48. The activities covered in the Penal Code sections referenced by Subsection

14  (g) of 12076 [28235] include: **(1)** the California FFL Check Program (Cal. Penal

15  Code § 12072(f)(1)) [27555]; **(2)** a public education program pertaining to

16  importers of personal handguns (Cal. Penal Code § 12072(f)(2)(D)) [27560(d)]; **(3)**

17  the Centralized List of Exempted FFLs (Cal. Penal Code § 12083) [28450]; **(4)**

18  inspections of Short-Barreled Long Gun Permit-Holders (Cal. Penal Code § 12099)

19  [33320]; **(5)** retesting of handguns certified as "not unsafe" (Cal. Penal Code §

20  12131(c) [32020]; **(6)** inspections of Machine Gun Permit-Holders (Cal. Penal

21  Code § 12234) [32670]; **(7)** public education program regarding registration of

22  "assault weapons" (Cal. Penal Code § 12289) [31115]; **(8)** inspections of "Assault

23  Weapon" Permit-Holders (Cal. Penal Code § 12289.5) [31110]; and **(9)** inspections

24  of "Destructive Device" Permit- Holders (Cal. Penal Code § 12305(f)-(g)) [19000].

25     49.  Penal Code section 12076(i)(1) [28240(a)] mandates that the DOJ shall

26  charge only one DROS "fee" for a single transaction on the same date for any

27  number of firearms that are not handguns (i.e., long-guns).

28     50.  Where an individual purchases a handgun and any number of long-guns at

1   the same time, DOJ charges the purchaser a full "DROS "fee" *for each* transaction.

2   51.  Penal Code section 12076(i)(2) [28240(b)], provides that, in a single

3   transaction on the same date for the delivery of any number of handguns, the DOJ

4   must charge a reduced DROS "fee" for any additional handguns that are part of that

5   same transaction.

6   52.  The DOJ promulgated California Code of Regulations, title 11, section

7   4001 increasing the cap on the DROS "fee" from $14 to $19 for the first handgun

8   in a single transaction, and for one or more rifles or shotguns in a single

9   transaction. And, DOJ capped the DROS "fee" for each additional *handgun* being

10  purchased at the same time as the first handgun at $15.

11  53.  The provisions conferring authority on DOJ to charge the DROS "fee"

12  (Sections 12076(e) [28225(a)] & (f)(1)(B)) [28230(a)(2)] do not require DOJ to

13  charge the maximum amount allowed for under that statute, or to even charge *any*

14  "fee" at all.

15  54.  DOJ requires DROS "fees" for almost *all* firearm sales by an FFL as well

16  as private party transfers of firearms (which must generally be processed through

17  an FFL).

18  55.  Pursuant to statute, revenue from the DROS "fee" is supposed to be

19  deposited into the DROS Special Account of the General Fund ("DROS Special

20  Account"). Cal. Pen. Code § 12076(g) [28235].

21  56.  Revenue placed in the DROS Special Account is generated from the

22  various different "fees" provided for in the Penal Code, covering a myriad of

23  unique programs.

24  57.  For example, revenues collected from fees for registration of "assault

25  weapons" and .50 BMG rifles (Cal. Pen. Code § 12285(a) & (b)) [30900-30905],

26  concealed weapon permit applications (Cal. Pen. Code § 12054) [26190(a)-(b)],

27  "Assault Weapon" Permits (Cal. Pen. Code §§ 12286-12287) [31000-31105],

28  Destructive Device Permits (Cal. Pen. Code § 12305(e)) [18905], among other fees,

1   are placed in the DROS Special Account.

2         **2.    Firearms Safety and Enforcement Special Fund "Fees"**

3           **a.     The Handgun Safety Certificate Exam "Fee" ($15)**

4       58.  A would-be handgun purchaser must obtain a Handgun Safety Certificate

5   ("HSC") before a handgun may be legally purchased.

6       59.  To obtain an HSC, a certified instructor (usually the FFL) administers a

7   test. Upon passage of the test, an individual receives an HSC, which is valid for

8   five (5) years.

9       60.  Penal Code section 12805(e) [31650(c)] provides: "The [DOJ] may charge

10   the certified instructor up to fifteen dollars ($15) for each handgun safety certificate

11   issued by that instructor to cover the [DOJ's] cost in carrying out and enforcing this

12   article, and enforcing this title, as determined annually by the [DOJ]."  The $15 fee

13   ("HSC Exam "fee") is generally charged to the exam taker by the FFL, as allowed

14   by law.

15       61.  "This title," as used in section 12805(e) [31650(c)], includes all manner of

16   laws regulating "deadly weapons," including not only handguns and long-guns, but

17   also "unsafe handguns," machine guns, "assault weapons," destructive devices,

18   ammunition, boobytraps, body armor, tear gas, silencers, and "less lethal devices."

19   *See* Title 2. Control of Deadly Weapons, Cal. Penal Code §§ 12000 [16850], *et seq*.

20       62.  Section 12805(e) [31650(c)], the statute conferring authority on DOJ to

21   charge the HSC Exam "fee", does not require the DOJ charge the maximum

22   amount authorized under that statute, or to even charge *any* "fee" at all.

23           **b.     The Section 12076.5 [28300] "Fee"**

24       63.  California Penal Code section 12076.5 [28300] provides:

25          (a) The Firearms Safety and Enforcement Special Fund is hereby
established in the State Treasury and shall be administered by the [DOJ].

26   Notwithstanding Section 13340 of the Government Code, all moneys in
the fund are continuously appropriated to the [DOJ] without regard to

27   fiscal years for the purpose of implementing and enforcing the provisions
of  Article 8 (commencing with Section 12800), as added by the Statutes

28   of 2001, enforcing the provisions of this title, and for the establishment,

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

maintenance and upgrading of equipment and services necessary for firearms dealers to comply with Section 12077 [28150-28180].

(b) The [DOJ] *may* require firearms dealers to charge each person who obtains a firearm a fee not to exceed five dollars ($5) for each transaction. Revenues from this fee shall be deposited in the Firearms Safety and Enforcement Special Fund.

64.   The "provisions of Article 8," enforcement of which is funded, at least in part, by the Section 12076.5 [28300] "fee," concern the Handgun Safety Certificate Program provided for in sections 12800 [31610], *et seq*.

65. The title referred to in section 12076.5 [28300], i.e., Title 2. Control of Deadly Weapons, Cal. Penal Code §§ 12000 [16850], *et seq*. (enforcement of which is funded, at least in part, by the Section 12076.5 [28300] "fee,") covers all manner of laws regulating "deadly weapons," including not only handguns and long-guns, but also "unsafe handguns," machine guns, "assault weapons," destructive devices, ammunition, boobytraps, body armor, tear gas, silencers, and less lethal devices.

66.  Section 12076.5 [28300] does not require the DOJ to charge the maximum amount authorized under that statute (*i.e.*, $5), or to even charge *any* fee at all.

### 3.   Firearm Safety Account "Fee" ($1)

Penal Code section 12088.9 [23690] provides:

(a) The [DOJ] *may* require each dealer to charge each firearm purchaser or transferee a fee not to exceed one dollar ($1) for each firearm transaction. The fee shall be for the purpose of supporting [DOJ] program costs related to this act, including the establishment, maintenance, and upgrading of related data base systems and public rosters.

(b) There is hereby created within the General Fund the Firearm Safety Account. Revenue from the fee imposed by subdivision (a) shall be deposited into the Firearm Safety Account and shall be available for expenditure by the [DOJ] upon appropriation by the Legislature. Expenditures from the Firearm Safety Account shall be limited to program expenditures as defined by subdivision (a).

67.  There is *no* provision in California law *requiring* DOJ to charge this fee at all.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

68.  With few exceptions, DEFENDANTS currently require that all transfers of any firearm, whether a handgun or a long-gun, be subject to this $1 fee.

## C.   Legislative History of the DROS "Fee" and Management of the DROS Special Account

69. The origins of the DROS system and its related "fees" are believed to go back to sometime in the 1920s.

70.  The amount of a DROS "fee" in and around the year 1990 was $4.25. *See* S. 670, 1995-1996 Leg. Sess. (Cal. 1995) (as introduced Feb. 22, 1995).

71.  By 1995, the DROS "fee" had ballooned to $14.00, an increase of greater than 300 percent in less than five years. S. 670, 1995-1996 Reg. Sess. (Cal. 1995) (as introduced Feb. 22, 1995).

72.  In 1995, the California Legislature passed Senate Bills 670 and 671 to cap the rate for a DROS "fee" at $14.00, with increases "at a rate not to exceed any increase in the California Consumer Price Index." That amendment is reflected in Penal Code section 12076(e) [28225(a)] described above.

73.  Senate Bill 670 (1995-1996 Reg. Sess. (Cal. 1995) (as enacted) further prohibited the DOJ from using the "fee" to "directly fund or as a loan to fund any program not specified."

74.  In the following years, a trend of appropriating DROS "fee" revenues to pay for additional activities unrelated to the clearance of the purchaser to buy a firearm emerged. A series of bills passed that allowed monies in the DROS Special Account to pay for the ever-expanding list of programs and services found at section 12076(g) [28235].

75.  For example, Assembly Bill 2080 (2002) established a program to address *illegal firearms trafficking* and authorized its funding from the DROS Special Account. *See* Penal Code §§ 12072(f)(1) [27555], 12076(g) [28235].

76.  Assembly Bill 2080 passed with less than two-thirds of the vote of all members elected to each of the two houses of the Legislature.

1    77.  Assembly Bill 2580 (2002) specifically amended section 12076(g)

2  [282235] to authorize funding from the DROS Special Account for the inspections

3  of several classes of dangerous weapon permit-holders. *See* Cal. Penal Code §§

4  12076(g) [28235], 12099 [33320] [inspections of short-barreled long gun permit-

5  holders], 12234 [inspections of machine gun permit-holders], 12289.5 [31110]

6  [inspections of "assault weapon" permit-holder], 12305(f)-(g) [19000] [inspections

7  of destructive devices permit-holders].

8    78.  Assembly Bill 2580 passed with less than two-thirds of the vote of all

9  members elected to each of the two houses of the Legislature.

10    79.  Assembly Bill 2902 (2002) specifically amended section 12076(g)

11  [28235] to authorize funding for the maintenance of the Centralized List of

12  Exempted FFLs and the re-testing of handguns deemed "not unsafe." *See* Cal.

13  Penal Code §§ 12076(g) [28235], 12083 [28450], 12131(c) [32020].

14    80.  Assembly Bill 2902 passed with less than two-thirds of the vote of all

15  members elected to each of the houses of the Legislature.

16    81.  In 2001, Plaintiff NATIONAL RIFLE ASSOCIATION (NRA) requested

17  the Office of California State Auditor ("CSA") to investigate the DOJ's operation

18  of the DROS program, believing that DROS Special Account funds were being

19  misused.

20    82.  CSA responded to Plaintiff NRA's request, stating that an audit of the

21  DROS program could only be conducted by request from the Joint Legislative

22  Audit Committee ("JLAC"). Plaintiff NRA then began working with members of

23  the Legislature to prepare a request to JLAC for an audit.

24    83.  Before Assembly Bill 2080's final passage in 2002, the Office of

25  Legislative Counsel was asked by Senator Bill Morrow to opine on whether

26  Assembly Bill 2080 authorized using DROS "fee" revenues, paid by individual

27  firearms transferees, to support Assembly Bill 2080's purposes. It was further

28  asked whether expending those revenues to support Assembly Bill 2080 would

1    convert the DROS "fee" into an unauthorized "tax."

2        84.  While awaiting the Office of Legislative Counsel's response to that

3    request, then Assemblyman (now Senator) Rod Wright sought information on the

4    DROS Special Account from the DOJ and Legislative Analyst's Office from the

5    Assembly Budget Committee. A week later, the Assembly Budget Subcommittee

6    on State Administration ordered the DOJ to submit a report on the DROS Special

7    Account status. *See* 2002 Budget Act, Item 0820-001-0460.

8        85.  The first report DOJ submitted to the Assembly Budget Subcommittee on

9    State Administration detailed the status of the DROS Special Account. But no audit

10   of spending was provided.

11       86.  Later that year, the Office of Legislative Counsel responded to Senator

12   Morrow's request regarding whether expending DROS revenues to support

13   Assembly Bill 2080 would convert the DROS "fee" into an unauthorized tax, with

14   the following analysis:

15   -    Section 12076(e) [28255(b)] provides that the DROS "fee" be no more

16        than is necessary to reimburse designated program purposes and may not

17        be used to fund any other program;

18   -    Nevertheless, section 12076(g) [28235] identifies other purposes for

19        which funds in the DROS Special Account may be used;

20   -    Under the rules of statutory construction, section 12076(g) [28235] refers

21        generally to money in the DROS Special Account, rather than specifically

22        to the revenue from the section 12076(e) [28225(a)] DROS "fee";

23   -    Because the DROS Special Account contains funds in addition to fees

24        obtained pursuant to 12076(e) [28225(b)(1)-(10)], the purposes of section

25        12076(g) [28235] may be accomplished without the use of 12076(e)

26        [28225(a)] [DROS] funds;

27   -    Because Assembly Bill 2080 did not amend 12076(e) [28225(a)-(c)] to

28        fund its new purposes, 12076(g) [28235] could not be construed to

authorize the expenditure of DROS "fees" for any purpose not specified in 12076(e) [28225(b)];

- Because Assembly Bill 2080 would not authorize the expenditure of DROS "fees" for the purposes of Assembly Bill 2080, the bill made no change that would raise the issue whether any unauthorized expenditure of those funds for that new purpose would constitute a "tax" under Section 3.

87. The Office of Legislative Counsel's response provided its explanation on how it believed subsections (e) and (g) of section 12076 [28225(a)-(c) and 28235, respectively] could coexist, but failed to address the crux of the matter of whether any or all of these "fees" were actually "taxes."

88. The DOJ and the Legislative Analyst's Office then submitted a supplemental report on the status of the DROS Special Account to the Legislature pursuant to the 2002 Budget Act, Item 0820-001-0460. That report summarized the annual DROS Special Account revenues and expenditures, DROS-related programs, DROS application receipt information, the fees then charged, and the average cost of processing each application. Claiming that expert staff and necessary funding were unavailable, however, the report did not provide the necessary comprehensive examination into the DOJ's fee structure to determine whether the DROS "fee" was recovering actual costs of the DROS program, or what aspects of it, or if adjustments to the amount of the fee were appropriate.

89. In 2003, Assembly Bill 161 passed by only 60.2% of the vote of both houses (i.e., significantly *less than two-thirds* of all members elected to each of the two houses of the Legislature).

90. Assembly Bill 161 removed the prohibition on using revenues from the DROS "fee" to "directly fund or as a loan to fund any program not specified," thereby allowing DOJ to use these funds collected firearm transactions for *any* "regulatory and enforcement activit[y] related to the sale, purchase, loan, or

1   transfer of firearms."[7]

2   91.  As Assembly Bill 161 made its way through the legislative process, the

3   Bill's sponsor argued that it did not expand the use of DROS "fees," but merely

4   *clarified* their use.[8]

5   92.  The Bill Analysis of Assembly Bill 161 also indicates the Legislature

6   relied on the Legislative Counsel's opinion that DROS "fee" revenues could not be

7   used to fund the activities mandated by Assembly Bill 2080.

8   93.  The enactment of section 12076(e)(10) [28225(b)(11)] expanded the

9   scope of section 12076(e) [28225(a)-(c)], providing a "catch-all" to ensure that

10  those programs (i.e., those sections listed in section 12076(g) [28235]) could be

11  supported by DROS "fees" in the DROS Special Account.

12  94.  Noting that the DOJ's previous reports lacked sufficient detail, on January

13  26, 2004, Senator Morrow submitted a written request to the JLAC, seeking a

14  formal audit of the DROS Special Account. That request was heard a month later.[9]

15  95.  A year after Assembly Bill 161 passed and expanded the list of activities

16  that DROS funds could be spent on, the DOJ adopted California Code of

17  Regulations, title 11, section 4001, which increased the cap on DROS "fees" as

18  described above. No support was provided by DOJ tying the $5 increase of the

19  maximum fee (from $14 to $19) to the CCPI, nor was any support provided by DOJ

20  justifying the $15 fee as necessary to cover its costs relating to the sale of an

21  additional handgun.

22  _____

23  [7] Found in current Penal Code section 12076(e)(10) [28225(b)(11)].

24  [8] See Sen. Comm. on Public Safety, Bill Analysis: Dealers Record of Sale Special

25  Account - Expanding Authorized Use - Appropriation to Fund Firearms Trafficking Prevention
    Act of 2002, at 10 (July 8, 2003) *available at*

26  http://www.leginfo.ca.gov/pub/03-04/bill/asm/ab_0151-0200/ab_161_cfa_20030708_141850_se

27  n_comm.html (last visited July 18, 2011).

28  [9] PLAINTIFFS have so far been unable to ascertain the vote or outcome of that February
    24, 2004 hearing, despite diligent efforts.

96.  California Code of Regulations, title 11, section 4001 remained in effect without any attempts by DOJ to amend it to raise or lower the fee, until 2010 when the DOJ issued a notice of proposed rulemaking stating its intent to *lower* the maximum fee allowed from $19 to the pre-2004 emergency regulation amount of $14.

97.  The 2010 initial statement of reasons concerning the proposed rulemaking indicated that "although the volume of DROS transactions has increased, the average time spent on each DROS, and thus the processing cost, has decreased."[10] It also noted that "[t]he proposed regulations [would] lower the current $19 DROS "fee" to $14, *commensurate with the actual cost of processing a DROS*."[11] (emphasis added).

98.  Ultimately, the 2010 proposed rulemaking was not adopted, presumably so that DOJ would continue obtaining a windfall from DROS "fee" revenues to fund present and future government activities.[12]

99.  After rejection of the proposed decrease in the DROS fee, Plaintiff NRA

---

[10]  Cal. Dept. of Justice, Initial Statement of Reasons concerning Proposed DROS Fee Regulations (2010), *available at* http://ag.ca.gov/firearms/regs/DROSisor.pdf (last visited Aug. 24, 2011).

[11]  *Id.*

[12]  The State's appetite for increased funds to pay for general police work off the backs of gun buyers is insatiable. Senate Bill 819 (Leno) is currently pending in the California Legislature. Senate Bill 819 seeks to again expand the uses to which DROS "fees" may be put, and would expand the use of "fees" to include "costs associated with [DOJ] firearms-related regulatory and enforcement activities regarding possession, in addition to costs associated with the explicitly referenced sale, purchase, loan, or transfer, of firearms." Assem. Comm. on Appropriations, Bill Analysis: Senate Bill 819, at 1 (July 5, 2011), *available at* http://www.leginfo.ca.gov/pub/11-12/bill/sen/sb_0801-0850/sb_819_cfa_20110705_162650_asm_comm.html (last visited Aug. 23, 2011). "To clear the [Armed and Prohibited Persons System] backlog of approximately 34,000 handguns, [DEFENDANT] Attorney General Harris is the sponsor of Senate Bill 819, which would revise the Penal Code to *expand* the use of existing regulatory fees collected by gun dealers to allow the state [DOJ] to use fee revenue to pay for the APPS program." Press Release, Office of the Attorney General, Attorney General Kamala D. Harris Announces Seizure of 1,200 Guns from Mentally Unstable and Other Individuals (June 16, 2011) (emphasis added).

---

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

submitted a request under the California Public Records Act to the DOJ Bureau of Firearms, seeking all writings constituting, referring or relating to (1) the DOJ's policies and procedures for the handling and management of the DROS Special Account since January 1, 2000, and (2) a detailed accounting of the DROS Special Account for the same period.

100.  An attorney with the DOJ Bureau of Firearms responded that there was no present way to compile the information sought, that no current audit of the DROS Special Account exists, that an official audit would be required, and that the Legislature has no money to initiate one.

101.  Plaintiff NRA was provided, however, with a list of services the DOJ Bureau of Firearms provides using monies from the DROS Special Account, a table summarizing the statutory and regulatory authority for the "fees" charged and services provided, a table summarizing DROS Special Account annual revenues and expenditures since 2001, and a summary of the number of long-gun and handgun transactions for which DROS "fees" were collected during the same period.

102.  In 2011, Plaintiff NRA sent the DOJ a follow-up request under the Public Records Act, seeking records explaining what constituted "DROS enforcement activities" as identified in the table DOJ previously disclosed that summarized its purported authority for the "fees" charged and services provided. Plaintiff NRA also requested other documents, including ledgers identifying individual transactions since 2001. The DOJ again asserted that no such accounting exists, raised numerous privilege grounds, and denied PLAINTIFF NRA's request.

## THE FEDERAL BACKGROUND CHECK SYSTEM

103.  The federal government has in place the National Instant Criminal Background Check System ("NICS").

104.  Mandated by the Brady Handgun Violence Prevention Act of 1993 ("the Brady Act"), Public Law 103-159, NICS was established so that an FFL could

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  contact federal agents by telephone or other electronic means and immediately

2  determine whether the transferee is prohibited from receiving firearms under

3  Section 922 (g) or (n) of Title 18, United States Code or state law.

4      105.  NICS provides full service to FFLs in 30 states, five U.S. territories, and

5  the District of Columbia.[13] Located at the FBI's Criminal Justice Information

6  Services (CnS) Division in Clarksburg, West Virginia, NICS processes background

7  checks for the FFLs in those states that have declined to serve as points of contact

8  for NICS. A "point of contact" state is one that conducts for itself all or part of the

9  background checks for that state's FFLs.

10     106.  Upon a would-be purchaser's completion of the required federal Form

11 4473, FFLs contact NICS via a toll-free telephone number, or electronically on the

12 Internet through the NICS E-Check System, to request a background check. NICS

13 is customarily available 17 hours a day, seven days a week, including holidays

14 (except for Christmas). The FFL will typically receive a response that the transfer

15 may proceed or is delayed within 30 seconds.

16     107.  As a point of contact state that has opted out of the NICS system,

17 California conducts its own background checks for California firearm purchases,

18 for which (at least in part)[14] it charges the DROS "fee."

19     108.  In comparison to California's DROS system, a NICS check, as a part of

20 the Criminal Justice Information Services Division of the FBI, costs a firearm

21 purchaser nothing. The background checks conducted by NICS are paid by the

22

23

24 _____

25     [13]  See FEDERAL BUREAU OF INVESTIGATION, CRIMINAL JUSTICE INFORMATION SERVICES
   DIVISION, NATIONAL INSTANT CRIMINAL BACKGROUND CHECK SYSTEM (NICS) OPERATIONS

26 2010, at 4, *available at*
   http://www.fbi.gov/about-us/cjis/nics/reports/2010-operations-report/2010-operations-report-pdf,

27 (last visited August 23, 2011).

28     [14]  *Id.*

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   funds appropriated to the FBI by Congress.[15]

2   **GENERAL ALLEGATIONS**

3   109.  Individual PLAINTIFFS BAUER, WARKENTIN, HACKER, FERRY,

4   and ADLEY, and those persons represented by organizational PLAINTIFFS NRA

5   and CRPA FOUNDATION, have each been required to, and have in fact paid each

6   and all of the Challenged Fees before taking possession of firearms purchased from

7   an FFL or transferred through an FFL, as a private party transfer.

8   110.  The funds from the Challenged Fees PLAINTIFFS paid were ultimately

9   surrendered to DEFENDANTS' control, and deposited into the DROS Special

10  Account.

11

12  **I.   Excessive Fees Are Being Imposed on the Exercise of a Constitutional Right**

13  111.  The fundamental right to possess firearms for protection includes a

14  corresponding right to acquire a firearm.

15  112.  The Challenged "Fees," which DOJ generally requires be paid before a

16  purchaser can acquire a firearm, are unconstitutional and illegal prerequisites on

17  the exercise of the fundamental right to acquire a firearm.

18  113.  The Challenged "Fees" are unconstitutional because they are imposed

19  for the purpose of funding, and in fact do fund, activities not reasonably related to

20  any legitimate government interest that concerns the regulation of lawful firearm

21  transactions.

22  114.  The Challenged "Fees" are unconstitutional because they are not

23  calculated to defray the expenses of policing activities reasonably related to the

24  legitimate government interests that concern the regulation of lawful firearm

25

26  _____

27  [15]  Federal Bureau of Investigation, Fiscal Year 2011 Authorization and Budget Request to Congress 4-56 and 4-57, *available at* http://www.justice.gov/jmd/2011justification/pdf/fy11-fbi-justification.pdf; *see also* Bureau of Justice Statistics, Survey of State Procedures Related to

28  Firearms Sales, 2005, *available at* http://bjs.ojp.usdoj.gov/content/pub/pdf/ssprfs05.pdf., at 3.

1    transactions.

2    **A.   The "Fees" Imposed Are Used For Purposes Unrelated to Regulating
     a Legitimate Interest**

3        **1.    The "DROS 'Fee'"**

4

5        115.  DOJ is spending revenues from the DROS "fee" on activities unrelated

6    to any legitimate government interest that concerns the regulation of lawful firearm

7    transactions.

8        116.  DEFENDANTS are using revenues from the DROS "fee" to fund all

9    those activities enumerated at section 12076(g) [28235].[16]

10       117.  The activities listed in 12076(g) [28235]; namely inspections of

11   Short-Barreled Long Gun Permit-holders (Cal. Penal Code § 12099) [33320],

12   retesting of handguns certified as "not unsafe" (Cal. Penal Code § 12131(c))

13   [32020], inspections of Machine Gun Permit-holders (Cal. Penal Code § 12234)

14   [32670], inspections of "Assault Weapon" Permit- holders (Cal. Penal Code §

15   12289.5) [31110], and inspections of Destructive Device Permit-holders (Cal.

16   Penal Code § 12305(f)-(g) [18910], are unrelated to the regulation of lawful

17   firearm purchases and purchasers, like PLAINTIFFS.

18       118.  The activities listed in 12076(g) [28235] cannot constitutionally be

19   funded by "fees" paid by lawful firearm purchasers, like PLAINTIFFS.

20       119.  Section 12076(g) [28235] - by authorizing the expenditure of revenues

21   from the DROS "fee" on the activities listed therein - on its face places the burden

22   of funding activities that are, unrelated to any legitimate government interest as to

23   the regulation of lawful firearm transactions on lawful firearm purchasers

24   exercising a constitutional right, instead of the general public.

25       120.  DOJ is improperly spending revenues from the DROS "fee" on general

26

27        [16]  PLAINTIFFS base this allegation, in part, on the legislative history for 12076(e)(10)
     [28225(b)(11)] (discussed *supra*), which explained it was passed, among other reasons, to allow
28   DROS "fee" revenues to be used for the activities listed in 12076(g) [28235].

1  law enforcement activities beyond those listed in 12076(g) [28235], which are

2  unrelated to any legitimate government interest as to the regulation of lawful

3  firearm transactions.

4         **2.   The HSC Exam and Section 12076.5 [28300] "Fees"**

5      121.  Penal Code Sections 12805(e) [31650(c)] and 12076.5(a) [28300(a)-(b)]

6  – by authorizing the expenditure of revenues from their respective "fee" on

7  enforcing general criminal laws including laws regulating machine guns, "assault

8  weapons," destructive devices, tear gas, silencers, etc. – on their face, place the

9  burden of funding activities unrelated to any legitimate government interest as to

10  the regulation of lawful firearm transactions on lawful firearm purchasers, instead

11  of the general public.

12      122.  Regulation of machine guns, "assault weapons," destructive devices, tear

13  gas, silencers, etc. bears no reasonable relationship to the regulation of lawful

14  firearm purchases and purchasers, like PLAINTIFFS.

15      123.   Many activities provided for in Penal Code Sections 12805(e)

16  [31650(c)] and 12076.5(a) [28300(a)-(b)] – including those regulating machine

17  guns, "assault weapons," destructive devices, tear gas, silencers, etc. – cannot

18  constitutionally be funded by "fees" charged under this section.

19      124.  DOJ is spending revenues from the HSC Exam "fee" on activities

20  unrelated to any legitimate government interest that concerns the regulation of

21  lawful firearm transactions.

22      125.  DOJ is spending revenues from the Section 12076.5 [28300(c)] "fee" on

23  activities unrelated to any legitimate government interest that concerns the

24  regulation of lawful firearm transactions.

25      126.  Despite being, at least in part, for the purpose of "implementing and

26  enforcing" the *Handgun* Safety Certificate Program, the Section 12076.5

27  [28300(c)]  "fee" is charged to purchasers of long-guns as well, some of whom may

28  not even own a handgun.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### 3.   The $1 "Fee"

127.  DOJ is spending revenues from the $1 "fee," on activities unrelated to any legitimate government interest that concerns the regulation of lawful firearm transactions.

128.  Law-abiding firearm purchasers like PLAINTIFFS are not just being required to internalize the full social costs of their choice to exercise their fundamental Second Amendment rights, but also those costs of choices *made by others*, including special weapon permittee holders (e.g., machine gun permits) and criminal users of *completely unrelated* firearms – much as if, for instance, all speakers were charged a fee that would be used to compensate those libeled by a small subset of speakers, or to subsidize those who engage in rallies or marches for causes that are unsupported by, or unavailable to, the payer.

129.  The costs incurred by the DOJ in the licensing of special weapon permits and general law enforcement activities, unrelated to any legitimate government interest that concerns the regulation of lawful firearm transactions, cannot constitutionally fall on the shoulders of lawful firearm transferees via a fee.

130.  The Challenged "Fees" unconstitutionally infringe on PLAINTIFFS' fundamental right to acquire firearms.

## II.   The Challenged "Fees" Are Unconstitutionally Excessive and Illegal

131.  Regardless of whether the "fees" are reasonably related to any legitimate government interest that concerns the regulation of lawful firearm transactions, they are still unconstitutionally excessive.

### A.   The DROS "Fee"

132.  The DROS "fee" is unconstitutionally excessive.

133.  Between 2004 and 2010, the DROS Special Account has sustained an average surplus exceeding $2 million annually.

134.  The revenues making up the surplus in the DROS Special Account were, at least in part, generated from the DROS "fee."

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

135.   The DROS "fee" exceeds the costs of DOJ's valid regulatory activities as to lawful firearm transactions. In explaining its proposal to lower the DROS "fee" in 2010, the DOJ stated "[t]he proposed regulations [would] lower the current $19 DROS "fee" to $14, commensurate with the *actual cost* of processing a DROS." [17]

136.   The amount of the surplus funds in the DROS Special Account is so high that the DROS "fee" is not set at an amount "reasonably necessary" to cover only valid regulatory programs.

137.   There is nothing requiring DOJ to charge the maximum amount *statutorily* allowed for a DROS "fee" ($19), as the DOJ has the discretion to impose the fee in the first place (or a lesser amount commensurate with covering its costs).

138.   DEFENDANTS have generally charged the maximum amount allowed by statute for the DROS "fee."

139.   There is no reasonable support tying the DROS "fee" amount DOJ decides to charge to DOJ's actual, constitutionally valid regulatory costs.

140.   The DROS "fee" exceeds the amount necessary to reimburse the DOJ for the costs of furthering any legitimate government interest that concerns the regulation of lawful firearm transactions.

**B.   The HSC Exam and Section 12076.5 [28300] "Fees"**

141.   The HSC Exam "fee" is unconstitutionally excessive.

142.   The "fee" authorized by Penal Code Section 12076.5 [28300] is unconstitutionally excessive.

143.   DEFENDANTS generally impose the maximum "fee" of $15.00 on certified instructors for every (with few exceptions) HSC exam, who in turn generally charge the $15 to the individual obtaining the HSC, as allowed by law.

---

[17]   Cal. Dept. of Justice, Bureau of Firearms, Initial Statement of Reasons [Concerning Proposed DROS Fee Rulemaking] (2010), *available at* http://ag.ca.gov/firearms/regs/DROSisor.pdf

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

144.   DEFENDANTS generally impose the maximum fee allowed by Section 12076.5 [28300(c)] of $5.00 (with few exceptions) on each individual handgun transaction and every long-gun transaction, no matter how many long-guns it involves.

145.   There is no reasonable support tying the HSC Exam "fee" amount DOJ decides to charge to DOJ's actual, constitutionally valid regulatory costs.

146.   There is no support tying the Section 12076.5 [28300(c)] "fee" amount DOJ decides to charge to DOJ's actual, constitutionally valid regulatory costs.

147.   The Firearms Safety and Enforcement Special Fund, in which revenues from the HSC Exam and Section 12076.5 [28300(c)] "fees" are supposedly maintained, has a substantial annual surplus.

**C.   The $1 "Fee"**

148.   The imposition of the $1 "fee" is unconstitutionally excessive.

149.   The Firearms Safety Account, in which revenues from the $1 "fee" are supposedly maintained, has a substantial annual surplus.

150.   There is no reasonable support tying the $1 "fee" DOJ imposes to DOJ's actual, constitutionally valid regulatory costs.

**III.   Section 3 – Unconstitutional Taxes**

151.   Under the test laid out in *Sinclair Paint Co.*, the Challenged Fees are invalid "taxes" on lawful firearm purchasers, in violation of the California Constitution.

**A.   The DROS "Fee"**

152.   The DROS "fee," as currently set, imposed, managed and spent by DOJ is an illegal "tax" under California law.

153.   The assessment of the DROS "fee" exceeds the reasonable cost of the valid regulatory activities funded by the revenues it generates.

154.   Many of the services funded by the DROS "fee" do not bear a sufficient relationship to the "fee" payer's (i.e., firearm purchaser's) burdens on or benefits

from those services.

155.  There is no reasonable nexus between a lawful firearm purchaser (i.e., the payer of the "fee") and *criminal* firearm misuse in general, or the administration of special-permit weapon issueance and use. Nonetheless, these programs and services performed by DEFENDANTS are funded using revenues from the DROS "fee."

156.  The DROS "fee" is levied, at least in part, to generate revenue, rather than solely for legitimate government interests as to the regulation of lawful firearm transactions.

157.  The general law enforcement activities funded by revenues from the DROS "fee" purportedly benefit society as a whole, not just lawful firearm purchasers.

158.  The DROS "fee" is levied to generate revenue for general governmental and law enforcement activities.

**B.    The HSC Exam "Fee"**

159.  The HSC Exam "fee," as currently managed by DOJ, is a "tax" under California law.

160.  The assessment of the HSC Exam "fee" exceeds the reasonable cost of the valid regulatory activities funded by the revenues it generates.

161.  Many of the services allegedly funded by the HSC Exam "fee" do not bear a sufficient relationship to the "fee" payer's (i.e., firearm purchaser's) burdens on or benefits from those services.

162.  There is no reasonable nexus between lawful firearm purchasers (i.e., the payer of the "fee") and *criminal* firearm misuse, or special-permit weapon use. Nonetheless, these programs and services are performed by DEFENDANTS using revenues from the HSC Exam "fee."

163.  The HSC Exam "fee" is levied, at least in part, to generate revenue, rather than solely for legitimate government interests as to the regulation of lawful

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    firearm transactions.

2        164.  The general law enforcement activities funded by revenues from the

3    HSC Exam "fee" benefit society as a whole, not just lawful firearm purchasers.

4        165.  The HSC Exam "fee" is levied to generate revenue for general

5    governmental activities.

6    **C.   The "Fee" Authorized by Penal Code Section 12076.5 [28300]**

7        166. The Section 12076.5 [28300(c)] "fee," as currently managed by DOJ, is a

8    "tax" under California law.

9        167.  The assessment of the Section 12076.5 [28300(c)] "fee" exceeds the

10   reasonable cost of the valid regulatory activities funded by the revenues it

11   generates.

12       168.  Many of the services allegedly funded by the Section 12076.5 [28300(c)]

13   "fee" do not bear a sufficient relationship to the "fee" payer's (i.e., firearm

14   purchaser's) burdens on or benefits from those services.

15       169.  There is no reasonable nexus between lawful firearm purchasers (i.e., the

16   payer of the "fee") and *criminal* firearm use, or the issuance of special weapons

17   permits.  Nonetheless, these programs and services performed by DEFENDANTS

18   are funded using revenues from the Section 12076.5 [28300(c)].

19       170.  Despite being, at least in part, for the purpose of "implementing and

20   enforcing" the *Handgun* Safety Certificate Program, the Section 12076.5

21   [28300(c)] "fee" is charged to purchasers of long-guns as well, some of whom may

22   not even own a handgun.

23       171.  The Section 12076.5 [28300(c)] "fee" is levied, at least in part, to

24   generate revenue, rather than solely for legitimate government interests as to the

25   regulation of lawful firearm transactions.

26       172.  The general law enforcement activities funded by revenues from the

27   Section 12076.5 [28300(c)] "fee" purportedly benefit society as a whole, not just

28   lawful firearm purchasers.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

173.  The Section 12076.5 [28300(c)] "fees" are levied to generate revenue for general governmental activities.

**D.   The $1 "Fee"**

174.  The $1 "fee" as currently managed by DOJ, is a "tax" under California law.

175.  The assessment of the $1 "fee" exceeds the reasonable cost of the valid regulatory activities funded by the revenues it generates.

176.  Many of the services allegedly funded by the $1 "fee" do not bear a sufficient relationship to the "fee" payer's (i.e., firearm purchaser's) burdens on or benefits from those services.

177.  There is no reasonable nexus between lawful firearm purchasers (i.e., the payer of the "fee") and *criminal* firearm use, or the issuance of special weapons permits.  Nonetheless, these programs and services performed by DEFENDANTS are funded using revenues from the $1 "fee."

178.  The $1 "fee" is levied, at least in part, to generate revenue, rather than solely for legitimate government interests as to the regulation of lawful firearm transactions.

179.  The general law enforcement activities funded by revenues from the $1 "fee" purportedly benefit society as a whole, not just lawful firearm purchasers.

180.  The $1 "fee" is levied to generate revenue for general governmental activities.

181.  DEFENDANTS cannot meet their burden of proving each of the Challenged "Fees" is not a tax under Section 3.

182.  As taxes, each of the Challenged Fees was required to have been adopted by a two-thirds majority vote of the Legislature; none was.

183.  The Challenged Fees are unconstitutionally imposed under the California Constitution, and are invalid and unenforceable.

/ / /

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## DECLARATORY JUDGMENT ALLEGATIONS

184.  There is an actual and present controversy between the parties hereto in that PLAINTIFFS contend that the manner in which DOJ currently imposes the Challenged Fees is unlawful. DEFENDANTS continue to choose to require lawful firearm purchasers, including PLAINTIFFS, to pay the maximum amount statutorily allowed for each of the Challenged Fees.

185.  PLAINTIFFS desire a judicial declaration of their rights and DEFENDANTS' duties; namely, that the manner in which DOJ currently imposes the Challenged Fees infringes on PLAINTIFFS' Second Amendment rights.

186.  PLAINTIFFS further desire a judicial declaration that the Challenged Fees are illegal "taxes" under Section 3 of Article XIIIA of the California Constitution, and that, as such, the statutes authorizing their imposition were required to have been adopted by the California Legislature pursuant to a two-thirds vote of both houses respectively, and that since none was, each is void and unenforceable.

## INJUNCTIVE RELIEF ALLEGATIONS

187.  If an injunction does not issue enjoining DEFENDANTS from imposing each of the Challenged Fees as currently imposed, PLAINTIFFS will be irreparably harmed. PLAINTIFFS are presently and continuously injured by the assessment of the Challenged Fees" insofar as they constitute unreasonable and unrelated preconditions on the exercise of PLAINTIFFS' Second Amendment rights.

188.  If not enjoined by this Court, DEFENDANTS will continue to enforce the Challenged Fees in derogation of PLAINTIFFS' Second Amendment rights.

189.  If an injunction does not issue enjoining DEFENDANTS from enforcing Penal Code sections 12076(g) [28235], 12076.5 [28300], and 12805(e) [31650(c)], PLAINTIFFS will be irreparably harmed. PLAINTIFFS are presently and continuously injured by the enforcement of these sections insofar as such

enforcement utilizes revenues from assessments charged solely to lawful firearm purchases for purposes not reasonably related thereto.

190.  If an injunction does not issue enjoining DEFENDANTS from enforcing California Penal Code sections 12076(e) [28225(a)-(c)], 12076.5 [28300], 12088.9 [23690], and 12805(e) [31650(c)]), PLAINTIFFS will be irreparably harmed. PLAINTIFFS are presently and continuously injured by the enforcement of these sections insofar as each constitutes an unlawful tax under the California Constitution.

191.  PLAINTIFFS have no plain, speedy, and adequate remedy at law. Damages are indeterminate or unascertainable and, in any event, would not fully redress any harm suffered by PLAINTIFFS as a result of DEFENDANTS subjecting PLAINTIFFS to the illegal Challenged Fees as a precondition to exercise their constitutional right to acquire firearms.

192.  Injunctive relief would eliminate PLAINTIFFS' irreparable harm and allow PLAINTIFFS to acquire firearms free from the unlawful assessments and taxes in accordance with their rights under the Second Amendment and the California Constitution.

193.  Accordingly, injunctive relief is appropriate.

**FIRST CLAIM FOR RELIEF:**
**VALIDITY OF ALL CHALLENGED "FEES"**
**Violation of the Second Amendment Right to Keep and Bear Arms**
**(U.S. Const., Amends. II and XIV)**
**(By All Plaintiffs Against All Defendants)**

194.  All of the above paragraphs are re-alleged and incorporated herein by reference.

195.  DEFENDANTS have imposed, and continue to impose, the Challenged Fees at an excessive amount beyond what is necessary to defray its valid regulatory expenses, use the resulting windfall revenues to fund activities unrelated to any legitimate government interest that concerns the regulation of lawful firearm transactions.  In doing so, DEFENDANTS are abusing their discretion, applying

1   the "fees" in an unconstitutional manner, and propagating customs, policies, and

2   practices that infringe on PLAINTIFFS' right to acquire firearms as guaranteed by

3   the Second and Fourteenth Amendments.

4       196.  DEFENDANTS cannot satisfy their burden of justifying these customs,

5   policies, and practices that infringe PLAINTIFFS' rights.

6       197.  PLAINTIFFS are entitled to injunctive relief against DEFENDANTS

7   and their officers, agents, servants, employees, and all persons in active concert or

8   participation with them who receive actual notice of the injunction, enjoining them

9   from engaging in such customs, policies, and practices.

**SECOND CLAIM FOR RELIEF:**
**FACIAL VALIDITY OF CALIFORNIA PENAL CODE SECTIONS 12076(G)**
**[28235], 12076.5(A),[28300], & 12805(E) [31650(C)]**
**Violation of the Second Amendment Right to Keep and Bear Arms**
**(U.S. Const., Amends. II and XIV)**
**(By All Plaintiffs Against All Defendants)**

14      198.  All of the above paragraphs are re-alleged and incorporated herein by

15  reference.

16      199.  By expressly authorizing DOJ to use revenues from the Challenged Fees

17  to fund activities unrelated to any legitimate government interest that concerns the

18  regulation of lawful firearm transactions, California Penal Code sections 12076(g)

19  [28235], 12076.5(a) [28300(a)-(b)], and 12805(e) [31650(c)] are unconstitutional

20  on their face.

21      200.  PLAINTIFFS are entitled to permanent injunctive relief against

22  DEFENDANTS, or any of their officers, agents, servants, employees, and all

23  persons in active concert or participation with them who receive actual notice of

24  the injunction, enjoining them from enforcing, or acting pursuant to, California

25  Penal Code sections 12076(g) [28235], 12076.5(a) [28300], or 12805(e)

26  [31650(c)].

27  ///

28  ///

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**THIRD CLAIM FOR RELIEF:**
**VALIDITY OF CALIFORNIA PENAL CODE SECTIONS**
**12076(e) &(g), 12076.5 [28300], 12088.9 [23690], and 12805(e) [31650(c)]**
**Violation of California Proposition 13**
**(California Const., Art. XIIIA, Sec. 3)**
**(By All Plaintiffs Against All Defendants)**

201.  All of the above paragraphs are re-alleged and incorporated herein by reference.

202.  Because California Penal Code sections 12076(e) & (g), 12076.5 [28300], 12088.9 [23690], and 12805(e) [31650(c)] provide for excessive government assessments to be levied against lawful firearm purchasers, the revenues from which are used for activities unrelated to lawful firearm purchases, each of these sections constitute a "tax" under the California Constitution, and were thus required to have been adopted by the California Legislature pursuant to a two-thirds vote of both legislative houses respectively, and since none was, each is void and unenforceable.

203.  PLAINTIFFS are thus entitled to permanent injunctive relief against DEFENDANTS, and any of their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, enjoining them from enforcing, or acting pursuant to, California Penal Code sections 12076(e) [28225(a)-(c)], 12076.5 [28300], 12088.9 [23690], and 12805(e) [31650(c)].

**PRAYER**

WHEREFORE PLAINTIFFS pray for relief as follows:

1) For a declaration that the Challenged Fees as currently imposed by DEFENDANTS infringe upon the right to acquire firearms protected by the Second Amendment, as incorporated into the Fourteenth Amendment, by impermissibly preconditioning the exercise of that right on the payment of an excessive assessment, the revenues from which are being used to fund activities unrelated to any legitimate government interest that concerns the regulation of lawful firearm

1   transactions, and that as such are invalid and cannot be imposed;

2       2) For a preliminary and permanent prohibitory injunction forbidding

3   DEFENDANTS and its agents, employees, officers, and representatives from

4   imposing the Challenged Fees without first limiting the activities for which their

5   revenues are used to only those activities concerning a legitimate government

6   interest as to the regulation of lawful firearm transactions, *and* reducing their

7   amounts to be commensurate with the *actual costs* of those activities.

8       3)  For a declaration that California Penal Code sections 12076(g) [28235],

9   12076.5(a) [28300], or 12805(e) [31650(c)] violate the Second Amendment on

10  their face.

11      4)  For a preliminary and permanent prohibitory injunction forbidding

12  DEFENDANTS and its agents, employees, officers, and representatives, from

13  enforcing, or acting pursuant to, California Penal Code sections 12076(g) [28235],

14  12076.5(a) [28300], or 12805(e) [31650(c)].

15      5)  For a declaration that California Penal Code sections 12076(e) & (g)

16  [28225(a)-(c), 28235], 12076.5 [28300], 12088.9 [23690] and 12805(e) [31650(c)]

17  are illegal taxes under Article XIIIA, Section 3 of the California Constitution.

18      6) For a preliminary and permanent prohibitory injunction forbidding

19  DEFENDANTS and its agents, employees, officers, and representatives, from

20  enforcing, or acting pursuant to, California Penal Code sections 12076(e) & (g)

21  [28225(a)-(c), 28235], 12076.5 [28300], 12088.9 [23690] and 12805(e) [31650(c)].

22      7) For an order enjoining DEFENDANTS from charging or collecting the

23  Challenged Fees in illegally excessive amounts, and from appropriating the

24  Challenged Fees for purposes unrelated to legitimate government interests as to the

25  regulation of lawful firearm transactions.

26  / / /

27  / / /

28  / / /

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

8) For remedies available pursuant to 42 U.S.C. § 1983 and for an award of reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988, California Code of Civil Procedure § 1021.5 and/or other applicable state and federal law;

9) For such other and further relief as may be just and proper.

Dated:  August 25, 2011                     Michel & Associates, P.C.


                                             /s/ C. D. Michel
                                             C. D. Michel
                                             Attorney for the Plaintiffs'

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF