1  C. D. Michel - S.B.N. 144258
   Sean A. Brady - S.B.N. 262007
2  MICHEL & ASSOCIATES, P.C.
   180 E. Ocean Boulevard, Suite 200
3  Long Beach, CA 90802
   Telephone: 562-216-4444
4  Facsimile: 562-216-4445
   Email: cmichel@michellawyers.com

6  Attorneys for Plaintiffs

8            IN THE UNITED STATES DISTRICT COURT

9        FOR THE EASTERN  DISTRICT OF CALIFORNIA

10            FRESNO BRANCH COURTHOUSE

11  BARRY BAUER, STEPHEN            ) CASE NO. 1:11-cv-01440-LJO-MJS
    WARKENTIN, NICOLE FERRY,        )
12  JEFFREY HACKER, NATIONAL        )
    RIFLE ASSOCIATION OF            ) **SECOND AMENDED COMPLAINT**
13  AMERICA, INC., CRPA             ) **FOR DECLARATORY AND**
    FOUNDATION, HERB BAUER          ) **INJUNCTIVE RELIEF**
14  SPORTING GOODS, INC.            )
                                    ) **42 U.S.C. sections 1983, 1988**
15          Plaintiffs             )
                                    )
16          vs.                    )
    KAMALA HARRIS, in Her Official  )
17  Capacity as Attorney General For the )
    State of California; STEPHEN    )
18  LINDLEY, in His Official Capacity )
    as Acting Chief for the California )
19  Department of Justice, and DOES 1- )
    10.                             )
20                                  )
            Defendants.             )
21  _____)
                                    )
22                                  )

24          PLAINTIFFS, by and through their undersigned attorneys, bring this

25  Complaint for Declaratory and Injunctive Relief against the above-named

26  Defendants, their employees, agents, and successors in office (collectively

27  "DEFENDANTS"), and in support thereof allege the following:

28

**INTRODUCTION**

1. This case involves an important constitutional principle, that while the government may impose fees on individuals seeking to engage in certain constitutionally protected activities, the monies generated by such fees cannot be used to finance state activities not reasonably related to regulating the fee payer's impact on the state.

2. Vindication of this principle requires that DEFENDANTS be enjoined from using monies generated by a fee, payment of which is required to obtain a firearm in California, for the purpose of funding general law enforcement activities associated with the California Department of Justices' ("DOJ") Armed Prohibited Persons System ("APPS")program. For, such activities share no reasonable nexus with regulating lawful firearm purchases and, thus, forcing fee payers like PLAINTIFFS to subsidize them is an unlawful infringement on the Second Amendment right to lawfully obtain a firearm.

3. When a person wishes to obtain a firearm in California, state law generally requires the person to obtain the firearm through a federally licensed California firearm vendor (commonly known as an "FFL").

4. In doing so, the would-be purchaser[1] must, among other things, fill out a Dealer's Record of Sale form ("DROS"), the information from which is used by DEFENDANTS[2] to conduct a background check and confirm the would-be purchaser may lawfully receive firearms before he or she can take possession of any firearm.  In the case of a handgun, the information is also used to register the

---

[1]  These fees apply even if a firearm is not being purchased but gifted or traded as well. But for simplicity sake "purchase" will be used throughout this Complaint to include all such activities unless specifically stated otherwise.

[2]  DEFENDANTS are being sued in their official capacity as heads of the California Department of Justice, which entity is authorized by the Legislature to expend the monies at issue in this action.

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    handgun to the purchaser in DEFENDANTS' Automated Firearm System ("AFS").

2         5.  DEFENDANTS have statutory discretion to charge firearm purchasers a

3    mandatory fee for processing each DROS for every firearm transaction (a "DROS

4    Fee"), which is collected from the firearm recipient through the FFL at the time of

5    initiating the firearm's transfer.

6         6.  The monies that are collected by DEFENDANTS from the DROS Fee are

7    placed in a special account separate from the general fund, from which the

8    Legislature may appropriate monies to the DEFENDANTS for statutorily

9    prescribed purposes.

10        7.  Originally, monies from the DROS Fee were intended to cover only DOJ's

11   costs of processing a DROS, conducting a background check, and, in the case of a

12   handgun, registration. But the activities for which DROS Fee funds are used have

13   been ever-expanding for years, going far beyond funding these basic regulatory

14   functions of the DOJ.

15        8.  PLAINTIFFS bring this suit to challenge the constitutionality of

16   DEFENDANTS' use of the revenues generated from the DROS Fee for general law

17   enforcement activities which have no relation to fee payers; specifically, activities

18   associated with the DOJ's Armed Prohibited Persons System program provided for

19   by California Penal Code section 28225(b)(11) [12076(e)(10)].[3]

20        9.  That section was recently amended to add mere *possession* of firearms to

21   the list of activities for which DEFENDANTS could use DROS Fee revenues,[4]

22

23   _____

24        [3]  Pursuant to the Legislature's enactment of Assembly Concurrent
     Resolution 73 (McCarthy) 2006, which authorized a Non-Substantive
25   Reorganization of California's Deadly Weapons Statutes, various California Penal
     Code sections were renumbered, effective January 1, 2012. For convenience and
26   ease of reference, the corresponding previous code section for each referenced
     Penal Code section is provided in brackets.
27

28        [4]  See S.B. 819, 2011 Reg.  Sess.  (Ca.  2011).

                                          3

1    thereby allowing the State to force *lawful* firearm *purchasers* to finance any law

2    enforcement operation concerning *unlawful* firearm *possession*. And that it has

3    done.

4        10.  Governor Brown recently signed into law Senate Bill 140 ("SB 140"),

5    appropriating $25 million dollars of the DROS Special Account's surplus – a

6    surplus that was not supposed to exist in the first place[5] – solely to fund activities

7    associated with the APPS program, which seeks to investigate individuals

8    suspected of possessing firearms unlawfully and to remove the firearms from their

9    possession.

10       11.  Law-abiding firearm purchasers like PLAINTIFFS are thus not just being

11   required to internalize the full social costs of their choice to exercise their

12   fundamental Second Amendment rights, but also those costs of choices *made by*

13   *others* to *criminally* use firearms – much as if, for instance, those exercising their

14   fundamental right to marry were forced to fund enforcement of domestic violence

15   restraining orders with their marriage license fees because some spouses become

16   subject to one, or, as if the license fees from those who exercise their fundamental

17   right to assemble in a public forum were taken to fund counter-gang measures

18

19       [5]  California law requires that the DROS fee "shall be no more than is

20   necessary to fund" certain activities provided by statute (Penal Code section

21   28225(b)(1)-(11) [12076(e)(1)-(10)]), and constitutional principles prohibit

22   excessive fees on constitutionally protected conduct.  *Murdock v. Pennsylvania*,

23   319 U.S. 105, 112-14 (1943). Arguably, the large surplus, here, is evidence

     suggesting the current DROS fee is excessive, in violation of state and federal law.

24   Plaintiffs in this case, however, do not ask the Court to resolve that argument. The

25   passage of SB140 has made the *expenditure* of the existing $25 million dollar

     surplus the more immediate concern. Moreover, whether the DROS fee is

26   excessive depends, in part, on first determining what activities may be considered

27   to fall within the scope of the DROS program and thus properly funded thereby.

     This case seeks a declaration that SB140 improperly authorizes expenditures on

28   APPS activities that do *not* fall within that scope, along with injunctive relief

     preventing such expenditures.

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

simply because they relate to gatherings of people, or, as if those who exercise their fundamental right to vote were forced to fund voter fraud enforcement actions via a poll tax.

12.  Because DEFENDANTS' use of DROS Fee revenues on purposes unrelated to the fee payer affects constitutionally protected activity, irreparable harm is presumed. Accordingly, PLAINTIFFS seek from this Court a declaration that DEFENDANTS' use of revenues generated from the DROS Fee to fund general law enforcement activities associated with the DOJ's APPS program is unconstitutional, because the criminal misuse of firearms is not sufficiently related to the fee payers' activities, i.e., lawful firearm transactions. And, as such, an injunction prohibiting DEFENDANTS from using those revenues on such activities should issue.

## JURISDICTION and VENUE

13.  Jurisdiction of this action is founded on 28 U.S.C. §§ 1331 and 1343, in that this action arises under the Constitution and laws of the United States, and under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983, in that this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs, and usages of the State of California and political subdivisions thereof, of rights, privileges, or immunities secured by the United States Constitution and by Acts of Congress.

14.  PLAINTIFFS' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202.

15.  Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

### I.   Plaintiffs

16.  Plaintiff BARRY BAUER is a resident, property owner, and taxpayer of

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  Fresno, California. Within the last five years, Plaintiff BAUER has lawfully
2  purchased firearms from an FFL, for which he has had to pay the DROS Fee.
3  Plaintiff BAUER intends to continue to purchase firearms through an FFL in the
4  future.

5       17.  Plaintiffs STEPHEN WARKENTIN and JEFFREY HACKER are
6  residents, property owners, and taxpayers of Fresno, California. Within the last five
7  years, each has purchased multiple firearms from both an FFL and a private party,
8  through an FFL as required by California Penal Code § 26500 [12070]. Plaintiffs
9  WARKENTIN and HACKER intend to continue their pattern of regularly
10 purchasing firearms through an FFL in the future.

11      18.  For each of their transactions, Plaintiffs WARKENTIN and HACKER
12 have paid the DROS Fee. Plaintiffs WARKENTIN and HACKER have had to pay
13 the DROS Fee multiple times in the same year, and, in some cases, the same
14 month.

15      19.  Plaintiff NICOLE FERRY is a resident of Fresno, California. Within the
16 last five years, Plaintiff FERRY has purchased handguns from an FFL for
17 self-defense and target practice. For each of her transactions, Plaintiff FERRY has
18 paid the DROS Fee. Plaintiff FERRY intends to purchase firearms through an FFL
19 in the future.

20      20.  Plaintiff NATIONAL RIFLE ASSOCIATION OF AMERICA, INC.
21 (hereafter "NRA") is a non-profit entity classified under section 501(c)(3) of the
22 Internal Revenue Code and incorporated under the laws of New York, with its
23 principal place of business in Fairfax, Virginia. NRA has a membership of
24 approximately 4 million persons. The purposes of NRA include protection of the
25 right of law-abiding citizens to keep and bear firearms for the lawful defense of
26 their families, persons, and property, and from unlawful government regulations
27 and preconditions placed on the exercise of that right. NRA spends its resources on
28 each of those activities. NRA brings this action on behalf of itself and its hundreds

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    of thousands of members in California, including Plaintiffs BAUER,

2    WARKENTIN, and HACKER, who have been, are being, and will in the future be

3    subjected to DEFENDANTS' imposition of the DROS Fee.

4        21.  Plaintiff CRPA FOUNDATION is a non-profit entity classified under

5    section 501(c)(3) of the Internal Revenue Code and incorporated under California

6    law, with headquarters in Fullerton, California. Contributions to the CRPA

7    FOUNDATION are used for the direct benefit of Californians. Funds contributed

8    to and granted by CRPA FOUNDATION benefit a wide variety of constituencies

9    throughout California, including gun collectors, hunters, target shooters, law

10   enforcement, and those who choose to own a firearm to defend themselves and

11   their families. The CRPA FOUNDATION spends its resources seeking to raise

12   awareness about unconstitutional laws, defend and expand the legal recognition of

13   the rights protected by the Second Amendment, promote firearms and hunting

14   safety, protect hunting rights, enhance marksmanship skills of those participating

15   in shooting sports, and educate the general public about firearms. The CRPA

16   FOUNDATION supports law enforcement and various charitable, educational,

17   scientific, and other firearms-related public interest activities that support and

18   defend the Second Amendment rights of all law-abiding Americans.

19       22.  In this suit, the CRPA FOUNDATION represents the interests of the

20   many citizen and taxpayer members of its related association, the California Rifle

21   and Pistol Association, who reside in California and who wish to sell or purchase

22   firearms, or who have sold or purchased firearms, and have been charged the

23   DROS Fee. These members are too numerous to conveniently bring this action

24   individually. The CRPA FOUNDATION brings this action on behalf of itself and

25   its tens of thousands of supporters in California, including Plaintiff BAUER, who

26   have been, are being, and will in the future be subjected to the DROS Fee being

27   used to fund unrelated activities.

28       23.  Plaintiff HERB BAUER SPORTING GOODS, INC., is a California

7

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

corporation with its principal place of business in the County of Fresno, California. It is a licensed firearms dealer under both federal and California law (i.e., an FFL) that sells a variety of firearms. California law requires Plaintiff HERB BAUER to collect the DROS Fee for DOJ, at DOJ's direction, from firearm transferees. Accordingly, Plaintiff HERB BAUER is injured by its being forced to facilitate DEFENDANTS' unlawful use of revenues collected from the DROS Fee.

24.  The individual PLAINTIFFS identified above are residents and taxpayers of California from the City and County of Fresno who have been required to pay the DROS Fee, Defendants' use of which violates PLAINTIFFS' constitutional rights.

25.  Each of the associational PLAINTIFFS identified above either has individual members or supporters, or represents individual members of a related organization, who are citizens and taxpayers of California, including in Fresno County, who have an acute interest in purchasing firearms and do not wish to pay unlawful fees, taxes, or other costs associated with that purchase and thus have standing to seek declaratory and injunctive relief to halt or reduce the unconstitutional use of the monies collected from the DROS Fee. The interests of these members are germane to their respective associations' purposes; and neither the claims asserted nor the relief requested herein requires their members participate in this lawsuit individually.

**II.   Defendants**

26.  Defendant KAMALA HARRIS is the Attorney General of California. She is the chief law enforcement officer of California, and is charged by Article V, Section 13 of the California Constitution with the duty to inform the general public and to supervise and instruct local prosecutors and law enforcement agencies regarding the meaning of the laws of the State, including the DROS Fee, and to ensure the fair, uniform and consistent enforcement of those laws throughout the state. She is sued in her official capacity.

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

27.  Defendant STEPHEN LINDLEY is the Acting Chief of the DOJ Bureau of Firearms and, as such, is responsible for executing, interpreting, and enforcing the laws of the State of California – as well as its customs, practices, and policies – at issue in this lawsuit. He is sued in his official capacity.

28.  Defendants HARRIS and LINDLEY (collectively "DEFENDANTS") are responsible for administering and enforcing the DROS Fee, are in fact presently enforcing the DROS Fee against PLAINTIFFS, and will continue to enforce the DROS Fee against PLAINTIFFS.

29.  DEFENDANTS also are responsible for spending monies appropriated to the DOJ by the Legislature from the DROS Special Account, and have been spending, are spending, and will continue to spend monies from the DROS Fee on the APPS program.

30.  The true names or capacities, whether individual, corporate, associate or otherwise of the DEFENDANTS named herein as DOES 1-10, are presently unknown to PLAINTIFFS, who therefore sue said DEFENDANTS by such fictitious names. PLAINTIFFS pray for leave to amend this Complaint and Petition to show the true names, capacities, and/or liabilities of DOE Defendants if and when they have been determined.

## OVERVIEW OF REGULATORY SCHEME

### I.    Constitutional Provisions and Controlling Law

31.  The Second Amendment to the United States Constitution provides: "A well regulated militia, being necessary to the security of a free State, the right of the people to keep and bear arms, shall not be infringed." U.S. Const. amend. II.

32.  The Second Amendment protects a fundamental, individual right to possess firearms for self-defense that is incorporated through the Due Process clause of the Fourteenth Amendment to restrict state and local governments from infringing on the right.

33.  The right to keep and bear arms for self-defense implies a corresponding

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    right to acquire firearms.

2        34.  The U.S. Supreme Court has made clear that government's authority to

3    levy fees on the exercise of constitutional rights is limited. Such fees may only be

4    imposed to defray the government's expenses incurred in regulating activities

5    reasonably related to the fee payer.

6    **II.    The Dealer's Record of Sale (DROS) Fee Imposed on Firearm Transfers**

7        35.  California confers discretion on DOJ to impose various fees on firearm

8    purchasers, which they must pay as a prerequisite to qualify for receiving a firearm.

9    The only fee at issue in this case is the DROS Fee, the one associated with

10   processing the Dealer's Record of Sale.

11       36.  California Penal Code sections 28225(a)-(c) [formerly 12076(e)], 28230

12   [12076(f)], 28235 [12076(g)], and 28240(a)-(b) [12076(i)], establish the fees

13   associated with a DROS, and govern what the funds collected therefrom can be

14   used for.

15       37.  Subdivision (a) of Penal Code section 28225 [12076(e)] provides:

16       The [DOJ] may require the [FFL] to charge each firearm purchaser a
         fee not to exceed fourteen dollars ($14), except that the fee may be
17       increased at a rate not to exceed any increase in the California
         Consumer Price Index as compiled and reported by the  Department of
18       Industrial Relations.

19       38.  The DOJ promulgated California Code of Regulations, Title 11, section

20   4001, increasing the cap on the DROS fee from $14 to $19 for the first handgun or

21   any number of rifles/shotguns in a single transaction, and capping the DROS fee

22   for each additional *handgun* being purchased along with the first handgun at $15.

23       39.  Subdivision (b) of Penal Code section 28225 [12076(e)] further provides

24   that "[t]he [DROS] fee shall be no more than is necessary to fund" the activities

25   enumerated at Penal Code section 28225(b)(1)-(11) [12076(e)(1)-(10)].

26       40.  Penal Code section 28225(b)(11) [12076(e)(10)] purports to authorize the

27   DOJ to use revenues from the DROS fee to fund "the estimated reasonable costs of

28   [DOJ] firearms-related regulatory and enforcement activities related to the sale,

---

10

purchase, possession, loan, or transfer of firearms."

41.  Prior to January 1, 2012, section 28225(b)(11) [12076(e)(10)] did not provide for expenditure of DROS fee revenues on the mere "possession" of firearms. But the Legislature amended that section during the 2011 Legislative session to allow for such, based on its following purported findings:

SECTION 1. The Legislature finds and declares all of the following:

(a) California is the first and only state in the nation to establish an automated system for tracking handgun and assault weapon owners who might fall into a prohibited status.

(b) The California Department of Justice (DOJ) is required to maintain an online database, which is currently known as the Armed Prohibited Persons System, otherwise known as APPS, which cross-references all handgun and assault weapon owners across the state against criminal history records to determine persons who have been, or will become, prohibited from possessing a firearm subsequent to the legal acquisition or registration of a firearm or assault weapon.

(c) The DOJ is further required to provide authorized law enforcement agencies with inquiry capabilities and investigative assistance to determine the prohibition status of a person of interest.

(d) Each day, the list of armed prohibited persons in California grows by about 15 to 20 people. There are currently more than 18,000 armed prohibited persons in California. Collectively, these individuals are believed to be in possession of over 34,000 handguns and 1,590 assault weapons. The illegal possession of these firearms presents a substantial danger to public safety.

(e) Neither the DOJ nor local law enforcement has sufficient resources to confiscate the enormous backlog of weapons, nor can they keep up with the daily influx of newly prohibited persons.

(f) A Dealer Record of Sale fee is imposed upon every sale or transfer of a firearm by a dealer in California. Existing law authorizes the DOJ to utilize these funds for firearms-related regulatory and enforcement activities related to the sale, purchase, loan, or transfer of firearms pursuant to any provision listed in Section 16580 of the Penal Code, but not expressly for the enforcement activities related to possession.

(g) Rather than placing an additional burden on the taxpayers of California to fund enhanced enforcement of the existing armed prohibited persons program, it is the intent of the Legislature in enacting this measure to allow the DOJ to utilize the Dealer Record of Sale Account for the additional, limited purpose of funding enforcement of the Armed Prohibited Persons System.

42.  Penal Code section 28230(a)(2) [12076(f)(1)(B)] provides for DOJ to also

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

use DROS fee revenues for "the actual processing costs associated with the submission of a [DROS] to the [DOJ]."

43.   Pursuant to statute, revenue from the DROS fee is supposed to be deposited into the DROS Special Account of the General Fund ("DROS Special Account") and appropriated by the Legislature. Cal. Penal Code § 28235 [12076(g)].

## GENERAL ALLEGATIONS

44.   All of the above paragraphs are re-alleged and incorporated herein by reference.

45.   Individual PLAINTIFFS BAUER, WARKENTIN, HACKER, and FERRY, and those persons represented by organizational PLAINTIFFS NRA and CRPA FOUNDATION, have each been required to pay, have in fact paid, and expect to pay in the future the DROS Fee as currently required by California law before taking possession of firearms purchased from an FFL or transferred through an FFL as a private party transfer.

46.   The funds from the DROS Fee that PLAINTIFFS paid and expect to pay in the future are purportedly deposited into the DROS Special Account and ultimately surrendered to DEFENDANTS' control pursuant to appropriation from the DROS Special Account by the Legislature.

47.   The Legislature has appropriated, and DEFENDANTS intend to spend from the DROS Special Account, $25 million to fund, at least in part, general law enforcement activities associated with the APPS Program.

48.   Because the fundamental right to possess a firearm under the Second Amendment includes a corresponding right to acquire a firearm, monies collected from the DROS Fee must only be used to fund activities that are reasonably related to the fee payer's impact on the state.

49.   Simply because the crimes targeted by the APPS program involve

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

firearms does not mean they have a sufficient nexus to DROS Fee payers such that its enforcement costs may constitutionally fall on the shoulders of PLAINTIFFS and other lawful firearm purchasers via the DROS Fee; they do not and cannot.

50.  DEFENDANTS cause PLAINTIFFS irreparable harm by choosing to spend revenues obtained from the DROS Fee on general law enforcement operations associated with the APPS program because they are requiring PLAINTIFFS to uniquely subsidize government services that are not reasonably related to regulating lawful firearms transactions, but are admittedly for the general welfare.

51.  The utilization of the DROS Fee by DEFENDANTS for these improper purposes necessitates judicial action to halt infringements and violations of PLAINTIFFS' constitutional rights.

## DECLARATORY JUDGMENT ALLEGATIONS

52.  All of the above paragraphs are re-alleged and incorporated herein by reference.

53.  There is an actual and present controversy between the parties hereto in that PLAINTIFFS contend that the manner in which DOJ currently uses the revenues from the DROS Fee is unconstitutional and on information and belief, allege that DEFENDANTS' disagree.

54.  PLAINTIFFS desire a judicial declaration of their rights and DEFENDANTS' duties; namely, that the DOJ's expenditure of monies collected from the DROS Fee on general law enforcement activities associated with the APPS program infringes on PLAINTIFFS' Second Amendment rights.

55.  To be clear, PLAINTIFFS do not ask this Court to address the legality of imposing the DROS Fee in the first place nor that of the APPS System. PLAINTIFFS here merely seek a declaration as to whether the monies from a fee that they are required to pay before they may lawfully engage in Second

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  Amendment protected conduct, i.e., obtaining a firearm, can be appropriated to
2  general law enforcement purposes unrelated to regulating PLAINTIFFS' impact on
3  the state.

4  **INJUNCTIVE RELIEF ALLEGATIONS**

5  56.  All of the above paragraphs are re-alleged and incorporated herein by
6  reference.

7  57.  PLAINTIFFS have been, are presently, and will continue to be
8  irreparably harmed by the assessment of the DROS Fee as a precondition on the
9  exercise of PLAINTIFFS' Second Amendment rights insofar as the revenues from
10  such assessment are utilized for purposes not reasonably related to regulating fee
11  payers' activities in lawfully obtaining a firearm, i.e., general law enforcement
12  activities.

13  58.  If an injunction does not issue from this Court enjoining DEFENDANTS
14  from spending DROS Fee revenues on such general law enforcement activities,
15  DEFENDANTS will continue to do so in derogation of PLAINTIFFS' Second
16  Amendment rights, thereby irreparably harming PLAINTIFFS.

17  59.  PLAINTIFFS have no adequate remedy at law. Damages are
18  indeterminate or unascertainable and, in any event, would not fully redress any
19  harm suffered by PLAINTIFFS as a result of DEFENDANTS subjecting
20  PLAINTIFFS to the illegal precondition on the exercise of PLAINTIFFS'
21  constitutional right to acquire firearms, i.e., funding general law enforcement
22  activities.

23  60.  Injunctive relief would eliminate PLAINTIFFS' irreparable harm and
24  allow PLAINTIFFS to acquire firearms free from the unlawful precondition
25  currently inherent in the mandatory DROS Fee, in accordance with their rights
26  under the Second and Fourteenth Amendments.

27  61.  Accordingly, injunctive relief is appropriate.

28

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**CLAIM FOR RELIEF:**
**VALIDITY OF DEFENDANTS' USE OF DROS FEE REVENUES**
**Violation of the Second Amendment Right to Keep and Bear Arms**
**(U.S. Const., Amends. II and XIV)**
**(By All Plaintiffs Against All Defendants)**

62.  All of the above paragraphs are re-alleged and incorporated herein by reference.

63.  DEFENDANTS use revenues collected from a fee, payment of which is generally required as a precondition for the lawful receipt of a firearm in California, in order to fund general law enforcement activities not reasonably related to regulating the behavior or impact on the state of the fee payers – like PLAINTIFFS. In doing so, DEFENDANTS are propagating customs, policies, and practices that infringe on PLAINTIFFS' right to acquire firearms as guaranteed by the Second and Fourteenth Amendments.

64.  DEFENDANTS cannot satisfy their burden of justifying these customs, policies, and practices that infringe PLAINTIFFS' rights.

65.  PLAINTIFFS are entitled to declaratory and injunctive relief against DEFENDANTS and their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, enjoining them from engaging in such customs, policies, and practices.

**PRAYER**

WHEREFORE PLAINTIFFS pray for relief as follows:

1) For a declaration that DEFENDANTS' enforcement of the APPS program is not sufficiently related to PLAINTIFFS' lawful firearm purchases so as to justify DEFENDANTS' using the revenues from the DROS Fee – which PLAINTIFFS must pay to obtain a firearm – for the purpose of funding the APPS program, and that such use of DROS Fee funds impermissibly infringes on PLAINTIFFS' Second Amendment rights because it improperly requires PLAINTIFFS to bear the burden of financing general law enforcement activities as a precondition to exercising those rights;

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

2) For a preliminary and permanent prohibitory injunction forbidding DEFENDANTS and their agents, employees, officers, and representatives from using DROS Fee revenues to fund the APPS program;

3) For remedies available pursuant to 42 U.S.C. § 1983 and for an award of reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988, and/or other applicable state and federal law;

4) For such other and further relief as may be just and proper.

Dated: July 24, 2013                    Michel & Associates, P.C.


                                         /s/ C. D. Michel
                                        C. D. Michel
                                        Attorney for the Plaintiffs

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN  DISTRICT OF CALIFORNIA

### FRESNO BRANCH COURTHOUSE

| | |
|---|---|
| BARRY BAUER, STEPHEN WARKENTIN, NICOLE FERRY, LELAND ADLEY, JEFFREY HACKER, NATIONAL  RIFLE ASSOCIATION OF AMERICA, INC.,  CALIFORNIA RIFLE PISTOL ASSOCIATION FOUNDATION, HERB BAUER SPORTING GOODS, INC. | ) **CASE NO. 1:11-cv-01440-LJO-MJS**<br>)<br>)<br>) **CERTIFICATE OF SERVICE**<br>)<br>)<br>)<br>)<br>) |
| Plaintiffs | )<br>) |
| vs. | ) |
| KAMALA HARRIS, in Her Official Capacity as Attorney General For the State of California; STEPHEN LINDLEY, in His Official Capacity as Acting Chief for the California Department of Justice, and DOES 1-10. | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>)<br>) |

IT IS HEREBY CERTIFIED THAT:

    I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 E. Ocean Blvd., Suite 200, Long Beach, California, 90802.

    I am not a party to the above-entitled action. I have caused service of:
**SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**
on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them. Electronically filed documents have been served conventionally by the filer to:

Anthony R. Hakl, Deputy Attorney General
California Department of Justice
Office of the Attorney General
Civil Law Division
Government Law Section
1300 I Street, Suite 125
Sacramento, CA 94244

    I declare under penalty of perjury that the foregoing is true and correct. Executed on July 24, 2013.

                    /s/ C. D. Michel
                    C. D. Michel
                    Attorney for Plaintiffs

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF