UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY BAUER, et al., | 1:11-cv-1440-LJO-MJS |
| Plaintiffs, | MEMORANDUM DECISION AND ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT (Docs. 51, 52) |
| v. | |
| KAMALA D. HARRIS, et al., | |
| Defendants. | |

## I. INTRODUCTION

This case presents a narrow yet novel issue under the Second Amendment to the United States Constitution. Plaintiffs[1] bring this suit under 42 U.S.C. § 1983 against Defendants[2] in which they contend the State of California's use of revenue generated by a fee imposed on every firearm sale conducted in the state, the Dealer's Record of Sale fee ("the DROS fee"), to fund a firearms-related law enforcement program administered by the California Department of Justice ("DOJ"), known as the Armed Prohibited Persons System ("the APPS"), violates the Second Amendment. Plaintiffs seek a declaration from this Court that Defendants' use of the revenue from the DROS fee to fund the APPS "impermissibly infringes on [Plaintiffs'] Second Amendment rights," Doc. 37, Second Amended Complaint ("SAC"), at 15, and an injunction "forbidding [Defendants] . . . from using DROS Fee

---

[1] Plaintiffs are Barry Bauer, Stephen Warkentin, Jeffrey Hacker, Nicole Ferry, the National Rifle Association of America, Inc., ("NRA"), California Rifle and Pistol Association Foundation ("CRPA"), and Herb Bauer Sporting Goods, Inc. ("Herb Bauer") (collectively, "Plaintiffs").

[2] Defendants are Kamala Harris, Stephen Lindley, and Does 1-100 (collectively, "Defendants").

1

revenues to fund the APPS program." *Id.* at 16.

Currently before the Court are the parties' cross motions for summary judgment. Docs. 51, 52. The Court finds it appropriate to rule on the motions without oral argument. *See* Local Rule 230(g). Further, the parties agree that this case can and should be resolved on the motions and that no trial is necessary. *See* Doc. 57. For the following reasons, the Court GRANTS Defendants' motion for summary judgment and DENIES Plaintiffs' motion for summary judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A.   Facts.[3]

The DROS fee imposes a fee of $19.00 "for one or more firearms (handguns, rifles, shotguns) transferred at the same time to the same transferee." Cal. Code. Regs. Tit. 11, § 4001; SUF 15; § 28225(a); Doc. 54-6, Defendants' Response to Plaintiffs' Statement of Undisputed Facts ("SUF") 31. Anyone who purchases a firearm from a federally licensed California firearm vendor ("FFL") in California must pay the DROS fee as a prerequisite to receiving the firearm. SUF 1, 15.

In 2001, the California legislature established the APPS. *See* Cal. Penal Code § 30000.[4] The APPS is "an online database . . . [, the] purpose of [which] is to cross-reference persons who have ownership or possession of a firearm" and who "fall within a class of persons who are prohibited from owning or possessing a firearm." § 30000(a); SUF 46. The DOJ describes the APPS as "populated with data from a number of existing DOJ databases, to identify criminals who are prohibited from possessing firearms subsequent to the legal acquisition of firearms or registration of assault weapons." SUF 47. "Any person who is on the APPS List may be investigated for criminal firearm possession and potentially an enforcement action by the [DOJ] to confiscate the firearms." SUF 52. The APPS Enforcement Section's responsibilities therefore include

---

[3] The parties agree that there are no materially factual disputes. *See* Doc. 57. Further, although the Court has reviewed the entire record, the Court will discuss only the facts necessary to resolve the parties' cross-motions for summary judgment.

[4] All further statutory references are to the California Penal Code unless otherwise indicated.

2

investigating, disarming, apprehending, and ensuring the prosecution of persons who are prohibited or become prohibited from purchasing or possessing a firearm as a result of their mental health status, a felony/violent misdemeanor conviction, and/or a domestic restraining order.

SUF 71. Revenue generated by the DROS fee is the "primary or exclusive funding source for the costs of employing the members of the APPS Unit and Enforcement Section." SUF 119.

### B. Procedural History.

Plaintiffs Bauer, Warkentin, Hacker, and Ferry have purchased firearms from California FFLs within the past five years and, in doing so, paid the DROS fee prior to acquiring those firearms. SAC at ¶¶ 16-19. In addition, Plaintiffs Warkentin and Hacker purchased firearms from a private party, through an FFL. *Id.* at ¶ 17.

Plaintiffs NRA and CRPA are non-profit civil rights groups dedicated to the protection of Second Amendment rights, *id.* at ¶¶ 20-21, and Herb Bauer is a California FFL that sells firearms. *Id.* at ¶ 23. Each of these Plaintiffs "either has individual members or supporters, or represents individual members of a related organization . . . who have an acute interest in purchasing firearms and do not wish to pay unlawful fees, taxes, or other costs associated with that purchase." *Id.* at ¶ 25.

Plaintiffs bring one claim under 42 U.S.C. § 1983, entitled "Validity of Defendants' Use of DROS Fee Revenues, Violation of the Second Amendment Right to Keep and Bear Arms (U.S. Const., Amends. II and XIV." *Id.* at 15. According to Plaintiffs, this case presents the issue of "whether the state can mandate that all *law-abiding* individuals who seek to exercise their right to acquire firearms bear the full cost of a law enforcement scheme designed to ferret out and confiscate firearms from those who *unlawfully* possess them." Doc. 52-1 at 7 (emphasis in original). Plaintiffs "challenge the constitutionality of [Defendants'] use of the revenues generated from the DROS Fee for general law enforcement activities which have no relation to fee payers; specifically, activities associated with [the APPS]." SAC at ¶ 8. Plaintiffs assert that Defendants' "use of revenues generated from the DROS Fee to fund general law enforcement activities associated with the [APPS] is unconstitutional, because the

criminal misuse of firearms is not sufficiently related to the fee payers' activities, i.e., lawful firearm transactions." *Id.* at ¶ 12. In other words, Plaintiffs maintain that "[t]he dispute in this matter is over the use of DROS Fee revenues being used to fund activities concerning the 'possession' of firearms specifically, and more specifically, their use for funding APPS activities." Doc. 52-1 at 10.

Plaintiffs seek a declaration from this Court that Defendants'

> enforcement of the APPS program is not sufficiently related to [Plaintiffs'] lawful firearm purchases so as to justify [Defendants'] using the revenues from the DROS Fee—which [Plaintiffs] must pay to obtain a firearm—for the purpose of funding the APPS program, and that such use of DROS Fee funds impermissibly infringes on [Plaintiffs'] Second Amendment rights because it improperly requires [Plaintiffs] to bear the burden of financing general law enforcement activities as a precondition to exercising those rights.

SAC at 15. Plaintiffs further seek "a preliminary and permanent prohibitory injunction forbidding [Defendants] . . . from using DROS Fee revenues to fund the APPS program." *Id.* at 16.

Defendants assert that the imposition of the DROS fee is constitutional because it "is designed to defray DOJ's costs associated with enforcing a variety of California's firearm laws, including but not limited to the laws related to APPS." Doc. 51-1 at 18. Analogizing to First Amendment precedent, Defendants claim "that there is nothing unconstitutional about imposing a fee on the exercise of a constitutional right when the fee is designed to defray the broad administrative costs of regulating the protected activity." *Id.* at 16. Defendants further assert "[t]here is also a common sense connection between the payment of a fee which is used, in part, to ensure that people desiring to possess firearms in California are not legally prohibited from possessing them and the use of that fee to recover firearms from persons who become prohibited from possessing them." *Id.* at 19. Simply put, Defendants contend that the DROS fee is a constitutionally permissible fee on constitutionally protected activity.

### III. STANDARD OF DECISION

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect the

4

outcome of the case under the applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable trier of fact could return a verdict in favor of the nonmoving party." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Cecala v. Newman*, 532 F. Supp. 2d 1118, 1132 (D. Ariz. 2007). If the movant will have the burden of proof at trial, it must demonstrate, with affirmative evidence, that "no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.* (citing *Celotex*, 477 U.S. at 323).

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting *affirmative evidence* from which a jury could find in [its] favor." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis in original). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. *Id.* at 929; *see also Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation omitted). "Where the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S.

253, 289 (1968)).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. That remains the province of the jury or fact finder. *See Anderson*, 477 U.S. at 255. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

## IV. ANALYSIS

The Second Amendment provides: "A well regulated militia being necessary to the security of a free state, the right of the people to keep and bear arms shall not be infringed." U.S. Const. amend. II. The Supreme Court holds "that the Second Amendment codified a pre-existing, individual right to keep and bear arms and that the 'central component of the right' is self-defense," *Peruta v. Cnty. of San Diego*, 742 F.3d 1144, 1149 (9th Cir. 2014) (citing *Heller v. District of Columbia*, 554 U.S. 570, 592, 599 (2008)), and that the right is fully applicable to the states. *McDonald v. City of Chicago*, 561 U.S. 742 (2010). The Supreme Court explained in *Heller* that

> [a]lthough we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

554 U.S. 626-27. Rather, the Court indicated that such regulations are "presumptively lawful." *Id.* at 627 n.26.

The Ninth Circuit outlined the applicable standards for assessing Second Amendment claims in *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 960 (9th Cir. 2014). The two-step inquiry the Ninth Circuit has adopted "(1) asks whether the challenged law burdens conduct protected by the Second Amendment and (2) if so, directs courts to apply an appropriate level of scrutiny." *Id.* (quoting

6

*United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013)).

In assessing the first step, the Court must ask "'whether the challenged law burdens conduct protected by the Second Amendment . . . based on a 'historical understanding of the scope of the [Second Amendment] right . . . or whether the challenged law falls within a 'well-defined and narrowly limited' category of prohibitions 'that have been historically unprotected.'" *Id.* (citations omitted). Although the Ninth Circuit has left determining the scope of the Second Amendment "for another day," *Nordyke v. King*, 681 F.3d 1041, 1044 (9th Cir. 2012) (en banc), that court holds that, "[t]o determine whether a challenged law falls outside the historical scope of the Second Amendment," the Court must ask "whether the regulation is one of the 'presumptively lawful regulatory measures' identified in *Heller*, 554 U.S. 627 n.26, or whether the record includes persuasive historical evidence establishing that the regulation at issue imposes prohibitions that fall outside the historical scope of the Second Amendment." *Jackson*, 746 F.3d at 960 (citations omitted). If a challenged law is a "presumptively lawful regulatory measure" as identified in *Heller*, or if it falls outside the historical scope of the Second Amendment, the inquiry ends—the challenged law does not violate the Second Amendment. *See id.*; *see also Peruta*, 742 F.3d at 1151 (citing *Nat'l Rifle Ass'n of Am. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 700 F.3d 185, 196 (5th Cir. 2012) ("For now, we state that a longstanding presumptively lawful regulatory measure . . . would likely [burden conduct] outside the ambit of the Second Amendment.")).

Plaintiffs have operated on the assumption that regulations on firearms commerce fall within the scope of the Second Amendment. But Plaintiffs do not provide—and the Court cannot find—any binding authority that so holds. Courts within the Ninth Circuit and elsewhere are split on the issue, and also are split on the applicable standard of scrutiny to apply, if any.[5]

---

[5] *See, e.g.*, *Silvester v. Harris*, __ F. Supp. 2d __, 2014 WL 4209563, at *27, 36 (E.D. Cal. Aug. 25, 2014) (finding California law imposing a 10-day waiting period on purchase of firearms "burdens [and violates] the Second Amendment right to keep and bear arms"); *United States v. Marzzarella*, 614 F.3d 85, 92 n.8 (3d Cir. 2010) ("Commercial regulations on the sale of firearms do not fall outside the scope of the Second Amendment"); *Illinois Ass'n of Firearms Retailers v. City of Chicago*,

7

As discussed, the Ninth Circuit in *Jackson* held that, "[t]o determine whether a challenged law falls outside the historical scope of the Second Amendment, we [first] ask whether the regulation is one of the 'presumptively lawful regulatory measures' identified in *Heller*." *See* 746 F.3d at 960 (citation omitted). The court further held that if a challenged regulation constitutes one of the "presumptively lawful regulatory measures" enumerated in *Heller*, then that regulation falls outside the ambit of the Second Amendment and no further inquiry is necessary. *Id.* (citation omitted). Other courts within the Ninth Circuit have read *Jackson* to stand for that proposition. *See, e.g.*, *Pena v. Lindley*, No. 2:09-cv-1185-KJM-CKD, Doc. 26 at 22 (E.D. Cal. Feb. 26, 2015) (holding that California law placing restrictions and regulations on, among other things, the sale of handguns is "'one of the presumptively lawful regulatory measures identified in *Heller*' and, as such, 'falls outside the historical scope' of the Second Amendment") (quoting *Jackson*, 746 F.3d at 960) (quotation marks omitted).

As Plaintiffs strenuously argue, the DROS fee is a condition on the sale of firearms: unless and until an individual pays the DROS fee, he/she may not purchase and possess the firearm. The DROS fee, therefore, is a presumptively lawful regulatory measure. *See Jackson*, 746 F.3d at 960. Accordingly, the DROS fee is constitutional because it "falls outside the historical scope of the Second Amendment." *Id.*

In any event, the DROS fee imposes only a $19.00 fee on firearm transactions. Under any level

---

961 F. Supp. 2d 928, 947 (N.D. Ill. 2014) (holding that Chicago's laws, "which ban gun sales and transfers other than inheritance, are declared unconstitutional under the Second Amendment"); *Teixeira v. Cnty. of Alameda*, No. 12-cv-3288-WHO, 2013 WL 4804756, at *7 (N.D. Cal. Sept. 9, 2013) (finding that regulation limiting areas where gun stores may be located is a presumptively lawful regulation "imposing conditions and qualifications on the commercial sale of arms" and thus "would pass any applicable level of scrutiny"); *Teixeira v. Cnty. of Alameda*, No. 12-cv-3288 SI, 2013 WL 707043, at *5 (N.D. Cal. Feb. 26, 2013) ("*Heller* envisioned a process where courts first examine whether the regulation is presumptively valid and therefore excepted from Second Amendment coverage—a presumption that may be overcome by a showing that the regulation nonetheless places a substantial burden the 'core protection of the Second Amendment,' which is the ability to defend 'hearth and home'") (citation omitted); *Montana Shooting Sports Ass'n v. Holder*, No. 09-cv-147-DWM-JCL, 2010 WL 3926029, at *21 (D. Mont. Aug. 31, 2010) (noting that individuals "who essentially claim they have the right to manufacture and sell firearms" had no Second Amendment claim because "the specific Second Amendment right recognized by *Heller* is simply not implicated"), *adopted by* 2010 WL 3909431 (D. Mont. Sept. 29, 2010); *United States v. Chafin*, 423 Fed. App'x 342, 344 (4th Cir. 2011) (finding no authority "that remotely suggests that, at the time of its ratification, the Second Amendment was understood to protect an individual's right to sell a firearm"); *Colorado Outfitters Ass'n v. Hickenlooper*, 24 F. Supp. 3d 1050, 1074 (D. Colo. 2014) ("Logically, if the government can lawfully regulate the ability of persons to obtain firearms from commercial dealers, that same power to regulate should extend to non-commercial transactions . . . . Thus, the Court has grave doubt that a law regulating (as opposed to prohibiting) temporary private transfers of firearms implicates the Second Amendment's guarantee at all.").

of scrutiny, the DROS fee is constitutional because it places only a marginal burden on "the core of the Second Amendment," which is "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Peruta*, 742 F.3d at 1181 (quoting *Heller*, 554 U.S. at 635).[6]

### V. CONCLUSION AND ORDER

For the foregoing reasons, the Court finds that Defendants' use of the DROS fee to fund the APPS does not violate the Second Amendment. Accordingly, the Court GRANTS Defendants' motion for summary judgment in Defendants' favor and against Plaintiffs. Plaintiffs' motion for summary judgment is DENIED. The Clerk of Court is directed to CLOSE this case.

IT IS SO ORDERED.

Dated:  **March 2, 2015**                **/s/ Lawrence J. O'Neill**
                                          UNITED STATES DISTRICT JUDGE

---

[6] Because Plaintiffs assumed the Second Amendment protects the activities at issue here—commercial sales of firearms—and Defendants do not challenge that assumption, the parties focused on whether California may impose the DROS fee as a condition of purchasing a firearm in the state. In doing so, both parties relied primarily on analogies to First Amendment jurisprudence in support of their respective positions. Plaintiffs correctly point out that other courts have applied the principles used to "analyz[e] government fees imposed on First Amendment protected conduct" in other civil rights contexts. *See* Doc. 52-1 at 21 (collecting cases). Plaintiffs are also correct that the Ninth Circuit has been "guided by First Amendment principles" in assessing Second Amendment claims. Doc. 52-1 (citing *Chovan*, 735 F.3d at 1138); *see also Jackson*, 746 F.3d at 960-61 (discussing use of First Amendment principles in applying appropriate level of scrutiny to Second Amendment claims). But, because the Ninth Circuit has not indicated that First Amendment precedent concerning whether and to what extent a state may impose a fee as a precondition to exercising a constitutional right is appropriate in the Second Amendment context, the Court declines to apply that precedent here.